IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLORADO BIOLABS, INC., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-0601-D |
| | § | |
| THREE ARROWS NUTRA, LLC, | § | |
| | § | |
| Defendant-Counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant Colorado Biolabs, Inc. ("CBL") sues defendant-counterplaintiff Three Arrows Nutra, LLC ("Three Arrows") for breach of a settlement agreement and other related claims, and Three Arrows counterclaims for breach of the same settlement agreement, breach of a nondisclosure agreement, and other related claims. Three Arrows moves to dismiss under Fed. R. Civ. P. 12(b)(6), 12(b)(7), and 19. CBL moves to dismiss Three Arrows' counterclaims under Rules 12(b)(1) and 12(b)(6). For the reasons that follow, the court grants in part and denies in part Three Arrows' motion and denies CBL's motion. The court grants CBL 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

I

CBL manufactures, markets, and sells under the name "Proferrin" an iron supplement product that contains Heme Iron[1] Polypeptide sourced from bovine blood.[2] CBL's competitor, Three Arrows, also manufactures, markets, and sells dietary iron supplements. Prior to the events giving rise to this lawsuit, Three Arrows' products were called and labeled "IronRepair *Heme Plus*" and "IronRepair *Simply Heme*."[3]

CBL's Proferrin products are black in color. When CBL noticed that Three Arrows' products, which were purportedly derived from bovine sources, were brown in color, it began to suspect that Three Arrows' IronRepair products did not actually contain Heme Iron, but were mislabeled. To further investigate, CBL conducted and commissioned a series of scientific assay tests[4] to confirm the actual iron content of the IronRepair products and

_____

[1]Heme Iron is developed from animal sources and has a much higher absorption rate than Non-Heme Iron. It can be taken with or without food and does not require a simultaneous dose of Vitamin C for absorption. Non-Heme Iron, by contrast, is generally developed from plant sources and has a much lower rate of absorption than Heme Iron. A person taking a Non-Heme Iron supplement generally must take it on an empty stomach and with a Vitamin C supplement.

[2]In deciding Three Arrows' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to CBL as the nonmovant, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in CBL's favor. *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). In deciding CBL's Rule 12(b)(6) motion, the court construes Three Arrows' counterclaims in Three Arrows' favor.

[3]Three Arrows later changed the name of "IronRepair *Heme Plus*" to "IronRepair *Plus*" and the name of "IronRepair *Simply Heme*" to "IronRepair *Simply*."

[4]Assay testing refers to the testing of an end product to determine its ingredients and composition. Assay testing is the only way to know definitively whether an iron supplement contains Heme Iron.

- 2 -

whether they contained Heme Iron. Internal testing of Three Arrows' products revealed that IronRepair *Heme Plus* contained only 3-7% of the amount of iron represented on its label and that IronRepair *Simply Heme* contained just 1-2% of the amount of iron reflected on its label. Further testing by an outside laboratory revealed that Heme Iron was "not detectable" in IronRepair *Simply Heme* or IronRepair *Heme Plus*.

In 2023 CBL sued Three Arrows in the Eastern District of Texas ("First Lawsuit"), asserting claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and seeking damages, disgorgement of profits, and injunctive relief. The parties eventually settled CBL's claims in the First Lawsuit. Under the terms of a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement"), executed on May 31, 2024, Three Arrows agreed (1) to pay CBL $400,000.00; (2) that, no later than September 1, 2024, it would re-label and re-brand the IronRepair products to eliminate all representations that the products constitute or contain Heme Iron ("Rebranding Obligation"); (3) that, beginning on September 1, 2024, it would not represent, expressly or by implication, that the IronRepair products or any other Three Arrows products contain Heme Iron ("No-Misrepresentation Obligation"); and (4) that neither party would disparage the other party or its employees, products, or services ("Non-Disparagement Obligation").

In September 2024 various members of the Iron Protocol Facebook Group, an online community focused on iron deficiency, posted questions and comments about the omission of the word "heme" from Three Arrows' new labeling. Three Arrows' owner, Krystal Moore ("Moore"), responded:

- 3 -

> Nothing fishy going on.
> Heme iron is animal derived.
> Iron Repair is made from bovine spleen only.
> We have every single batch 3rd party tested to ensure purity &
> potency.

Compl. (ECF No. 1) ¶ 35.  When asked to clarify whether the IronRepair products contain

Heme Iron or Non-Heme Iron, Moore responded that Three Arrows was in the process of

updating its labels and that "[t]he batches currently in production will list Iron 20 mg [a]s

non-GMO grass fed & finished bovine spleen." *Id.* ¶ 37.  In response to the question whether

Three Arrows' products are "all heme," Moore posted that "the iron is 100% derived from

bovine spleen (animal sourced)." *Id.* ¶¶ 38, 40.[5]

According to CBL's complaint, as recently as March 11, 2025 Three Arrows has used

its website to falsely represent that its IronRepair products contain Heme Iron.  CBL alleges

that Three Arrows has tried to "dupe" its customers into believing that the IronRepair

products contain Heme Iron by simultaneously espousing the myriad benefits of Heme Iron

over Non-Heme Iron, making clear that Heme Iron comes from animal sources, and stating

that the IronRepair products are made with bovine spleen.  CBL also alleges that Three

Arrows has used its Amazon storefront to market its IronRepair products as containing Heme

Iron by using old product labels and descriptions and Q&A responses that specifically

include the word "heme."

---

[5]Moore's original response stated, "yes, the iron is 100% derived from bovine spleen (animal sourced)," Compl. (ECF No. 1) ¶ 38, but after CBL notified Three Arrows that it was in breach of the Settlement Agreement, Moore deleted the word "yes" from her post.

Three Arrows Brand Ambassador Caitlyn R. Hartigan ("Hartigan")[6] manages and administers the Iron Protocol Facebook Group.  CBL alleges that, in response to questions about Three Arrows' products and the new IronRepair labeling, Hartigan falsely communicated that the IronRepair products contain Heme Iron and posted disparaging statements regarding CBL, Proferrin, and the First Lawsuit.  Moore did not correct any of Hartigan's false statements or disparaging comments, which CBL alleges were made on Three Arrows' behalf.

In March 2025 CBL filed the instant lawsuit, alleging that Three Arrows has failed to comply with its Rebranding and No-Misrepresentation Obligations under the Settlement Agreement; has continued to falsely represent that its IronRepair products contain or constitute Heme Iron; and has disparaged CBL.  Three Arrows brings claims for breach of the Settlement Agreement, false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition and business disparagement.

Three Arrows counterclaims against CBL for breach of the Settlement Agreement, breach of the parties' September 25, 2023 Non-Disclosure Agreement ("NDA"), and unfair competition under common law and the Lanham Act, 15 U.S.C. § 1125(a).  In support of its counterclaims, Three Arrows alleges that CBL implied in a post on the Reddit "subreddit" for persons with anemia that Three Arrows admitted liability in the First Lawsuit; disclosed (also in a post on Reddit) information that was designated "CONFIDENTIAL" under the

---

[6]As a "Brand Ambassador," Hartigan receives a commission when customers purchase IronRepair products using her discount code.

NDA; misrepresented on its own website that it is the only company that manufacturers Heme Iron in the United States [Counter; and misrepresented to its customers the amount of Heme Iron that its products contain.

Three Arrows moves to dismiss CBL's action under Rules 12(b)(6), 12(b)(7), and 19. CBL opposes Three Arrows' motion and moves to dismiss Three Arrows' counterclaims under Rules 12(b)(1) and 12(b)(6). The court is deciding the motions on the briefs, without oral argument.

## II

The court first considers Three Arrows' Rule 12(b)(6) motion to dismiss, which requires the court to decide whether CBL has stated a claim on which relief can be granted. "In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind*., 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

Three Arrows moves in part to dismiss on the ground that all of CBL's claims arising before May 31, 2024 are barred by the Settlement Agreement, which

> fully and forever release[d] and discharge[d] Three Arrows of and from all claims, demands, damages, liability, responsibility, and causes of action of whatever nature, character or description, known or unknown, suspected or unsuspected, past, present, or future, arising from or relating to the past or current branding, labeling, marketing, advertising, or sale of the IronRepair Products.

Compl. Ex. 2 (ECF No. 1-2) at 2-3. Three Arrows contends that this language makes clear that the parties intended to, and did, release all claims and causes of action arising before the Settlement Agreement was executed, and that, because the Settlement Agreement bars all claims that arose before May 31, 2024, CBL's pre-settlement claims must be dismissed as a matter of law.

CBL responds that none of its claims in this lawsuit is barred by the Settlement Agreement because the conduct giving rise to these claims had not yet occurred when the

Settlement Agreement was executed; the Settlement Agreement created *new* rights and obligations—for example, the obligation, beginning on September 1, 2024, to "not state or represent . . . that the IronRepair Products . . . constitutes, consists of, or contains any amount of Heme Iron," *id.* at 2—and these new rights underlie CBL's current claims; and every allegation in the complaint related to Three Arrows' false statements and product misrepresentations is based on conduct that occurred *after* September 1, 2024.

The court agrees with CBL that all of its claims are based on conduct that post-dates the Settlement Agreement and, therefore, are not barred by the Settlement Agreement's release provision—i.e., the claims do not arise from, or relate to, the past or current (as of May 31, 2024) branding, labeling, marketing, advertising, or sale of the IronRepair products. Accordingly, the court denies this ground of Three Arrows' motion to dismiss.

IV

Three Arrows next contends that CBL has failed to state a claim for common law business disparagement.

A

To prevail on a claim for business disparagement under Texas[7] law "a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc*., 124 S.W.3d 167, 170 (Tex. 2003) (citing *Hurlbut v. Gulf*

---

[7]Because CBL relies on Texas case law in its response brief, the court assumes that it intended to plead its claim for business disparagement under Texas common law.

*Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).  "Proof of special damages is an essential part of [a] cause of action for business disparagement."  *Hurlbut*, 749 S.W.2d at 767; *see also Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) ("[P]roof of special damages is a 'fundamental element of the tort.'" (quoting *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014))).  "The requirement goes to the cause of action itself and requires that plaintiff 'establish pecuniary loss that has been realized or liquidated as in the case of specific lost sales.'"  *Hurlbut*, 749 S.W.2d at 767 (citation omitted); *see also Waste Mgmt. of Tex., Inc.*, 434 S.W.3d at 155 ("[S]pecial damages 'are economic damages such as for lost income.'" (citation omitted)).

### B

Three Arrows moves to dismiss CBL's common law business disparagement claim on the ground, *inter alia*, that CBL has failed to plausibly allege that it has suffered special damages.[8]  It maintains that CBL has not alleged any lost sales or other dealings as a result of any statements allegedly published by Three Arrows and that its failure to plead any specific facts supporting its clam of special damages is fatal to its claim.

CBL responds that it need not produce direct evidence of pecuniary loss at the motion

_____

[8]Because the court concludes that CBL has failed to plausibly allege special damages in support of its common law business disparagement claim, it need not address Three Arrows' other ground for dismissal, i.e., that CBL has failed to allege that Three Arrows, as opposed to Hartigan, made the defamatory or disparaging statements on the Iron Protocol Facebook Group.

to dismiss stage.  It also maintains that

> Three Arrows' slurs about CBL easily permit a reasonable
> inference that the customers and prospective customers in the
> Iron Protocol Facebook Group failed and refused to purchase
> CBL products when they would have done so otherwise.  As
> summarized above, CBL's complaint includes facts plausibly
> showing that at least one member of the Iron Protocol Facebook
> Group (and, upon information and belief, many others) declined
> or refused to purchase CBL products as a direct result of Three
> Arrows' false and disparaging comments about CBL and
> Proferrin.

P. Br. (ECF No. 13) at 10 (citing Compl. (ECF No. 1) ¶¶ 64-67).

### C

The court concludes that CBL has failed to plausibly allege the special damages

element of its common law business disparagement claim.  CBL cites in its response a string

of posts on the Iron Protocol Facebook Group to contend that at least one member "declined

or refused to purchase CBL products as a direct result of Three Arrows'" disparaging

statements.  *Id.* (citing Compl. (ECF No. 1) ¶¶ 64-67).  But the part of the complaint that

CBL cites does not permit the court to draw the reasonable inference that "Three Arrows'

slurs about CBL," *id.*, "result[ed] in a direct pecuniary loss that has been realized or

liquidated, such as specific lost sales, loss of trade, or loss of other dealings," *AHBP LLC v.

Lynd Co.*, 649 F.Supp.3d 371, 398-99 (W.D. Tex. 2023) (quoting *Encompass Off. Sols., Inc.

v. Ingenix, Inc.*, 775 F.Supp.2d 938, 959 (E.D. Tex. 2011)).  In fact, the allegations of the

complaint do not permit the court to draw the reasonable inference that the allegedly

disparaging statements resulted in the loss of even one sale.

- 10 -

CBL alleges that when one Iron Protocol Facebook Group member asked another member about the litigation between Three Arrows and CBL, Hartigan posed the following: "yes and to clarify your screen shot, it's a competitor, Proferrin.  Pissed three arrows was taking so much of their market share and trying to make them go out of business."  Compl. (ECF No. 1) ¶ 64.  Hartigan also posted that "proferrin tried to take them down and bleed them out in legal fees because they were pissed they infringed on their market share.  We've talked about it in the group before multiple times, so it's not something that's hidden."  *Id.* ¶ 65.  In response to another member's inquiry about the reason for the name change from "IronRepair *Simply Heme*" to "IronRepair *Simply*" Hartigan posted:

> if you see the comments above it goes over it.  Proferrin the competitor came after them mad that they took a chunk of their market share and wanted to bleed them dry in legal battles. Easier for her to settle on removing the word heme than going out of business due to legal fees.

*Id.* ¶ 66.  Later in the thread, an Iron Protocol Facebook Group member named Cherry Vanil ("Vanil") posted, "boo proferrin!  I [heart] three arrows.  I think this group and three arrows saved my life."  *Id.* ¶ 67 (alteration in original).

The allegations described above at most permit the reasonable inference that one member of the Iron Protocol Facebook Group (Vanil) preferred Three Arrows' products over Proferrin.  But there is no suggestion that the reason for this preference had anything to do with the First Lawsuit or Hartigan's comments.  CBL does not allege that it lost a single sale, or otherwise suffered any direct pecuniary loss, as a result of Hartigan's statements.  Its conclusory allegation that Three Arrows "has published false and disparaging information

about it, with malice, without privilege, and which caused CBL to suffer special damages," Compl. (ECF No. 1) ¶ 109, is insufficient of itself to plausibly allege special damages. *See*, *e.g.*, *Encompass Off. Sols., Inc*., 775 F.Supp.2d at 959 (concluding that conclusory statement regarding lost profits and lost business "void of any supporting facts, is insufficient to support a claim for business disparagement").

Accordingly, the court grants Three Arrows' motion to dismiss CBL's common law business disparagement claim.

V

Three Arrows moves to dismiss CBL's claims for false advertising and unfair competition under the Lanham Act on the ground that CBL has failed to plausibly allege that any false statements were disseminated broadly enough to constitute actionable commercial advertising or promotion.

A

The Lanham Act applies to misrepresentations made in "commercial advertising or promotion."[9] 15 U.S.C. § 1125(a)(1)(B).

---

[9]Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, provides in relevant part:

> Any person who . . . *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B) (emphasis added).

- 12 -

> In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. While the representations need not be made in a "classical advertising campaign," but may consist instead of more informal types of "promotion," the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (citation omitted).[10]

The level of public dissemination required to constitute advertising and promotion "var[ies] from industry to industry and from case to case." *Id*. at 1385 (quoting *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1078 (N.D. Ill. 1993)). While "merely isolated, individual statements of opinion by a single sales representative to a single customer" do not ordinarily suffice, "even a single promotional presentation to an individual purchaser may be enough" where the "potential purchasers in the market are relatively limited in number." *Id.* at 1386. Actionable statements do not need to be made in the form of a "classical advertising campaign" and can include "more informal types of "promotion,'" as long as they are sufficiently disseminated to the relevant purchasing public.

---

[10]The Supreme Court in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), held that even indirect competitors had standing to sue under the Lanham Act so long as they alleged that the injuries they experienced were within the "zone of interests" protected by the Lanham Act and were proximately caused by the defendant's misrepresentations. *Id*. at 137-38. After *Lexmark*, several circuit courts have declined to apply the commercial competition element of the commercial advertising or promotion statement test on the basis that its non-applicability is a necessary implication of *Lexmark*. *See, e.g.*, *El Paso Disposal, LP v. Ecube Labs Co.*, 2025 WL 1766310, at *4 n.5 (W.D. Tex. June 26, 2025) (citing cases).

*AHBP LLC v. Lynd Co.*, 2023 WL 139714, at *7 (W.D. Tex. Jan. 9, 2023). Thus "[u]se of technology and social media may be a means to present false and actionable statements under the Lanham Act." *ReSea Project ApS v. Restoring Integrity to Oceans, Inc.*, 2023 WL 222244, at *4 (W.D. Tex. Jan. 17, 2023) ("using 'a domain name and Facebook page' to make false advertising statements is actionable under the Lanham Act." (quoting *Heartbrand Holdings, Inc. v. Whitmer*, 2021 WL 1947875, at *2 (W.D. Tex. May 14, 2021))). And the promotion of products on Amazon.com or the defendant's website is also a proper basis for relief under the Lanham Act. *See, e.g.*, *Alamo Lights, LLC v. Four Bros Lighting & Bulbs, Inc.*, 2018 WL 1404406, at *2 (W.D. Tex. Mar. 20, 2018) (granting preliminary injunction with respect to Lanham Act claim based on false advertising of products on Amazon.com); *Greater Hous. Transp. Co. v. Uber Techs., Inc*., 155 F.Supp.3d 670, 687 (S.D. Tex. 2015) (false statement "available to the consuming public at all times" on defendant's website can "give rise to a cognizable claim under the Lanham Act").

B

CBL's false advertising claim is based on four categories of alleged misconduct: (1) Moore's Facebook posts on the Iron Protocol Facebook Group, (2) Hartigan's Facebook posts in the same group, (3) "deep-linked" webpages on Three Arrows' website, and (4) product descriptions on certain of Three Arrows' Amazon Storefront listings. Three Arrows contends that CBL has not pleaded that the allegedly false statements in these four categories were sufficiently disseminated to constitute "commercial advertising or promotion." It maintains that the Iron Protocol Facebook Group is not a commercial forum for

advertisements, but is, instead, a private online community, and isolated posts responding to others "are merely isolated comments unrelated to any commercial advertising campaign," D. Br. (ECF No. 6) at 13, and are not sufficiently disseminated to the purchasing public. Regarding the website allegations, Three Arrows posits that "[m]erely posting information on a company's own website, without more, is insufficient to establish broad dissemination to the relevant consumer base" under the Lanham Act. *Id.* Regarding Three Arrows' Amazon product descriptions, Three Arrows maintains that CBL fails to plead facts demonstrating that any particular statements were affirmatively disseminated or promoted sufficiently to the relevant public and that "[t]he mere availability of product descriptions or comments on an Amazon page—without allegations regarding paid promotions, sponsored product placements, extensive advertising campaigns, or targeted consumer outreach—is insufficient to constitute actionable advertising or promotion." *Id.* at 14.

CBL responds that posting false information to a Facebook group and promoting products by means of false advertising on Amazon can constitute "commercial advertisement" under the Lanham Act; that the Iron Protocol Facebook Group is a very large and robust market for actual and potential purchasers of Three Arrows' iron supplements; and that misrepresentations posted to a defendant's publicly-available website can also support false advertising liability under the Lanham Act.

C

The court holds that the allegations in the complaint are sufficient to enable the court to draw the reasonable inference that Three Arrows engaged in "commercial advertising or

promotion," as that phrase is used in the Lanham Act.[11]

CBL alleges that Three Arrows posted false or misleading information about its products on the Iron Protocol Facebook Group, "an online community focused on iron deficiency," that is "by far, the largest online group primarily dedicated to iron deficiency issues." Compl. (ECF No. 1) ¶ 33. It also asserts that the Iron Protocol Facebook Group "has approximately 166,300 members," and that "[b]ecause of its focus and membership, [it] is an important part of the iron supplement market and a valuable source of potential iron supplement customers." Compl. (ECF No. 1) ¶ 33. At the pleading stage, these allegations are sufficient to enable the court to draw the reasonable inference that Three Arrows' allegedly misleading statements were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion'" within the iron supplement market. *Seven-Up Co.*, 86 F.3d at 1384 (citation omitted). CBL has also adequately alleged that Three Arrows made misleading statements on its Amazon Storefront and in the "deep linked" pages on its website that were sufficiently disseminated to the relevant purchasing public because they were "available to the consuming public at all times." *Greater Hous. Transp. Co.*, 155 F.Supp.3d at 687.

---

[11]At the summary judgment stage, or at trial, CBL will of course be required to support the "commercial advertising or promotion" element of its Lanham Act claim with evidence. *See, e.g.*, *El Paso Disposal, LP*, 2025 WL 1766310, at *5. The court's conclusion at the pleading stage is that the allegations of the complaint are sufficient. *Id.* ("[W]hether a false statement was sufficiently disseminated [i]s 'ordinarily a question of fact inappropriate for resolution on a motion to dismiss.'" (quoting *Wakefern Food Corp. v. Marchese*, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021)).

Three Arrows does not dispute that its alleged statements constitute commercial speech or that they were made for the purpose of soliciting business for itself. Accordingly, the court holds that CBL has plausibly pleaded that Three Arrows' statements were made in the context of commercial advertising or promotion. And because Three Arrows does not present any other grounds for dismissing CBL's Lanham Act claim, the court denies Three Arrows' motion to dismiss with respect to this claim.

D

Three Arrows also moves to dismiss CBL's common law unfair competition claim. It posits that, because CBL's Lanham Act claim fails, its derivative common law unfair competition claim must also fail. As explained above, the court is denying Three Arrows' motion to dismiss CBL's Lanham Act claim. Accordingly, it also denies Three Arrows' motion to dismiss CBL's common law unfair competition claim.

VI

The court now turns to CBL's claim for breach of the Settlement Agreement. Three Arrows moves to dismiss this claim on the ground that, to the extent this claim is "not co-extensive of its other claims," CBL has failed to state a claim because it fails to "plead specific facts tying its claimed damages to its alleged breaches of contract." D. Br. (ECF No. 6) at 15, 16.

CBL's complaint alleges that Three Arrows' misrepresentations about the Heme Iron content of its products have "eroded, and will continue to erode, CBL's brand as a producer and seller of genuine Heme Iron supplements," Compl. (ECF No. 1) ¶ 69; have "caused, and

will continue to cause, CBL to lose market share and suffer other injuries," *id.*; have "entice[d] consumers to purchase the IronRepair Products over CBL's products," *id.* ¶ 70; have "entice[d] consumers who would otherwise buy CBL's genuine Heme Iron products to buy its misrepresented IronRepair products instead," *id.* ¶ 71; and have "depriv[ed] CBL of business and goodwill, and . . . injure[d] CBL's relationships with existing and prospective customers," *id.* ¶ 72. These allegations are sufficient at the Rule 12(b)(6) stage[12] to plausibly allege damages as a result of Three Arrows' breach of the Settlement Agreement. Three Arrows does not move to dismiss CBL's claim for breach of the Settlement Agreement on any other ground. Accordingly, the court denies Three Arrows' motion to dismiss this claim.

VII

The court next considers Three Arrows' Rule 12(b)(7) motion to dismiss for failure to join an indispensable party, i.e., Hartigan.

A

Rule 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 "provides for the joinder of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

"Determining whether to dismiss a case for failure to join an indispensable party

---

[12]The court suggests no view, of course, concerning whether CBL's claim can withstand a motion for summary judgment or prevail at trial. The court only concludes that dismissal based on Rule 12(b)(6) is unwarranted.

requires a two-step inquiry." *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must decide whether the party is a necessary or required party who should be added pursuant to Rule 19(a).[13] Under Rule 19(a), "[i]t is not feasible to join a party if . . . the party is not subject to personal jurisdiction, or if the joinder would destroy subject matter jurisdiction." *GTG Holdings, Inc. v. Amvensys Cap. Grp., LLC*, 2015 WL 4634557, at *2 (N.D. Tex. Aug. 3, 2015) (Lynn, J.) (citing Rule 19(a)).

Second, if the party is a necessary party, as defined in Rule 19(a)(1), but cannot be joined because joinder is infeasible, "the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party." *Hood*, 570 F.3d at 629 (quoting *HS Res.*, 327 F.3d at 439). Rule 19(b) lists factors for the

---

[13]Rule 19(a) provides, in pertinent part:

(a) Persons Required to be Joined if Feasible.
(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 19(a)(1) (bold font and italics omitted).

- 19 -

court to consider in making that determination.[14]  If, after considering these factors, the court

determines that the litigation cannot reasonably continue without the absent party, then the

absentee is deemed "indispensable," and the court should dismiss. *Hood*, 570 F.3d at 628-29.

"Thus a Rule 12(b)(7) motion to dismiss will be granted only where there is an absent party

who is both necessary and indispensable and whose joinder is infeasible." *Bobby Goldstein*

*Prods., Inc. v. E.W. Scripps Co.*, 2023 WL 4748208, at *3 (N.D. Tex. July 25, 2023)

(Fitzwater, J.).

B

The first question the court must address is whether Three Arrows has satisfied its

burden of establishing that Hartigan is a required party under Rule 19(a)(1).  Three Arrows

maintains that Hartigan is a necessary party for several reasons, but concedes that she is

subject to service of process and that her joinder would not destroy the court's subject matter

---

[14]The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Rule 19(b).

jurisdiction.

This court has previously held that, to satisfy the requirements of Rule 19(a) and secure dismissal for failure to join an indispensable party, the moving party must show that joinder is not feasible—for instance, because the court cannot exercise personal jurisdiction over the absentee.  *See, e.g.*, *Bobby Goldstein Prods., Inc.*, 2023 WL 4748208, at *4; *see also, e.g.*, *Hanson Aggregates, Inc. v. Roberts & Schaefer Co.*, 2006 WL 8437485, at *7 (N.D. Tex. Feb. 17, 2006) (Solis, J.) ("The burden is on the movant to show that an absent party is necessary, *cannot be joined* and is indispensable such that the action should be dismissed." (emphasis added)).  By its own admission, Three Arrows has not satisfied this burden.  *See* D. Br. (ECF No. 6) at 18 ("Hartigan is subject to service of process and would not destroy the Court's subject matter jurisdiction.").  Accordingly, the court denies Three Arrows' Rule 12(b)(7) motion to dismiss for failure to join an indispensable party.

C

But even assuming that Three Arrows' failure to show that the court lacks personal jurisdiction over Hartigan is not fatal to its motion, the court also denies the motion because Three Arrows has failed to satisfy the requirements of Rule 19(a)(1)(A).[15]

Rule 19(a)(1)(A) provides that a party is necessary if, "in that person's absence, the court cannot accord complete relief among existing parties[.]"  Three Arrows maintains that

---

[15]Three Arrows does not contend that Hartigan claims an interest relating to the subject of the action, as set out in Rule 19(a)(1)(B).

any relief would be inadequate in Hartigan's absence because CBL seeks injunctive relief aimed at restraining Hartigan's Facebook comments and posts and, "[i]n the unlikely event Plaintiff prevails on its claims related to Ms. Hartigan's conduct, the injunctive relief requested by Plaintiff would necessarily affect a non-party." D. Br. (ECF No. 6) at 18. But Three Arrows mischaracterizes the nature of the injunctive relief CBL seeks. In its prayer for relief, CBL requests injunctive relief against "Three Arrows, and all persons *acting or purporting to act on its behalf*," in other words, Three Arrows' agents. This type of relief is akin to that which is already available to CBL, despite Hartigan's absence, under Rule 65(d)(2). Rule 65(d)(2) provides that an injunction binds "the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)." Three Arrows has failed to demonstrate that CBL's request for injunctive relief against Three Arrows "and all persons acting or purporting to act on its behalf" seeks relief that cannot already be granted completely in Hartigan's absence because, under Rule 65(d)(2)(B), an injunction entered against Three Arrows can apply to Hartigan as its agent or employee.

Three Arrows has failed to carry its burden of establishing that Hartigan is a necessary party under Rule 19(a). In light of this ruling, the court need not analyze the factors outlined in Rule 19(b). *See Walker v. Inter-Ams. Ins. Corp.*, 2004 WL 1620790, at *3 (N.D. Tex. July 19, 2004) (Buchmeyer, J.). Accordingly, the court denies defendants' Rule 12(b)(7) motion

to dismiss for failure to join an indispensable party.[16]

## VIII

The court turns next to CBL's motion to dismiss Three Arrows' counterclaims, beginning with Three Arrows' counterclaims for breach of the Settlement Agreement and NDA.

## A

The Non-Disparagement Obligation of the Settlement Agreement provides, in pertinent part, that "[e]ach Party agrees that it will not make to any other person or entity any false, misleading, threatening, or disparaging statement regarding the other Party or that Party's employees, products, or services."  Compl. Ex. 2 (ECF No. 1-2) at 3.  Three Arrows alleges [in counterclaim I] that CBL breached the Non-Disparagement Obligation when it posted on the anemic subreddit (a forum for persons with anemia) that "Three Arrows has updated their claims and do not actually contain heme iron!," which "essentially asserts that Three Arrows admitted to liability in the First [Lawsuit]."  Countercl. (ECF No. 10) ¶ 15.[17]

---

[16]To the extent that Three Arrows argues that CBL "should be ordered to join Ms. Hartigan as a required party," D. Br. (ECF No. 6) at 19, "[i]t is well-settled that Rule 19 does not require joinder of joint tortfeasors, of a principal and agent, or of persons against whom a party may have a claim for contribution or indemnity."  *Harris v. Utopia Fitness, Inc.*, 2013 WL 5502813, at *2 (N.D. Tex. Oct. 3, 2013) (McBryde, J.) (citing *Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880-81 (5th Cir. 1987)).

[17]Three Arrows uses the same paragraph numbers in its counterclaim I (breach of contract) and counterclaim II (breach of NDA).  Because the counterclaim to which the court is referring in this memorandum opinion and order should be apparent from the context, the court will not renumber the paragraphs in Three Arrows' counterclaims.

CBL moves to dismiss this counterclaim on the grounds that the statement is not false; Three Arrows has not plausibly alleged that it suffered any damages as a result of the statement; and Three Arrows has not plausibly alleged that it fully performed all of its obligations under the Settlement Agreement.

B

Three Arrows agreed in the Settlement Agreement that

> [b]eginning September 1, 2024 and continuing indefinitely thereafter, Three Arrows will not state or represent, whether expressly or by implication, that the IronRepair Products, or any other existing or future product that Three Arrows may at any time brand, label, market, advertise, or sell, constitutes, consists of, or contains any amount of Heme Iron.

Compl. Ex. 2 (ECF No. 1-2) at 2. Based on this provision, CBL maintains that its statement that "Three Arrows has updated their claims and do not actually contain heme iron" is not false, but is instead "an objectively true and accurate statement that Three Arrows acknowledged and agreed to in the Settlement Agreement," and that Three Arrows therefore cannot plead that CBL's post is false or disparaging. P. Br. (ECF No. 12) at 6.

Three Arrows responds that, although it agreed in the Settlement Agreement to remove any reference that its products contain Heme Iron, it did *not* agree to any admission that its products do not contain Heme Iron. It cites the "No Admission of Liability"[18]

_____

[18]This provision states, in pertinent part, that "neither the fact of nor any provisions contained in this Settlement Agreement, nor any actions taken pursuant to this Settlement Agreement, shall constitute or be construed as an admission of liability, fault, or the validity of any claim, liability, or defense." Compl. Ex. 2 (ECF No. 1-2) at 4.

provision of the Settlement Agreement and posits that CBL's statements are disparaging because they assert that Three Arrows admitted liability in the First Lawsuit when, in fact, "Three Arrows has never admitted that its products do not actually contain heme iron." D. Br. (ECF No. 21) at 5.

CBL replies that Three Arrows' affirmative, contractual promise that it will never again represent or suggest that its products contain Heme Iron is, for purposes of evaluating Three Arrows' counterclaims, "tantamount to an admission that its products do not contain Heme Iron," P. Reply (ECF No. 22) at 1; that if, as Three Arrows implies, its products actually *do* contain Heme Iron, then the Settlement Agreement would essentially force it to lie to the consuming public about its products, which would be illegal; and that, under any definition of the term "disparagement," CBL's posts cannot be disparaging because they "say nothing more or less than what Three Arrows has already confessed," *id.* at 4.

Without suggesting a view on whether Three Arrows will prevail on its breach of contract counterclaim on summary judgment or at trial, the court holds that Three Arrows has plausibly pleaded sufficient facts at the motion to dismiss stage to support this counterclaim. The Settlement Agreement prohibits CBL from making disparaging statements regarding Three Arrows or its products. Three Arrows alleges that CBL's post, which suggests that Three Arrows admitted liability in the First Lawsuit, was "clearly meant to disparage Three Arrows by leveraging the parties' confidential Settlement Agreement." Countercl. (ECF No. 10) ¶ 15. Three Arrows' allegations are sufficient to plausibly plead the breach element of

Three Arrows' breach of contract counterclaim.[19]

## C

Regarding damages, Three Arrows alleges that CBL's statements "were intended to, and did, demean Three Arrows," Countercl. (ECF No. 10) ¶ 26; that CBL's statements "cast doubt on the quality of Three Arrow[s'] goods or services," *id.*; and that, as a result of CBL's breach, Three Arrows has suffered damages, *id.* ¶ 27. These allegations are sufficient at the Rule 12(b)(6) stage to plausibly plead damages as a result of CBL's alleged breach of the Settlement Agreement.

## D

CBL maintains that Three Arrows' breach of contract counterclaim must be dismissed because Three Arrows has not plausibly alleged that it fully performed all of its obligations under the Settlement Agreement.

In its counterclaims, Three Arrows alleges that it "has performed its obligations under the Settlement Agreement." *Id.* ¶ 25. It specifically pleads that it "agreed to rebrand its products to remove any reference that its products contain heme iron and to pay CBL $400,000 over the course of eight months," *id.* ¶ 13, and that "[a]s CBL is well aware, Three Arrows rebranded its products solely to avoid the cost of further litigation," *id.* ¶ 15. Three

---

[19]Three Arrows also alleges that CBL breached the confidentiality provision of the Settlement Agreement by "stating that Three Arrows updated their claims and that Three Arrow's products no longer contain heme iron." Countercl. (ECF No. 10) ¶ 26. CBL does not contend in its motion to dismiss that Three Arrows has failed to plausibly plead that CBL's statement constituted a breach of the confidentiality provision of the Settlement Agreement.

Arrows has therefore plausibly pleaded full performance of all of its obligations under the Settlement Agreement.

E

CBL moves to dismiss Three Arrows' counterclaim for breach of the NDA, contending that the challenged statement does not state, or even suggest, that the information referenced came from Three Arrows; that CBL commissioned and obtained its own test results for Three Arrows' products and every test showed that the product contained no measurable amount of Heme Iron; that "[a]t best, Three Arrows has alleged the *possibility* that this statement refers to Three Arrows' confidential test results[, b]ut it is equally possible that the statement is referring to the different test results that CBL commissioned and obtained on its own," P. Br. (ECF No. 12) at 9; and that Three Arrows cannot plausibly plead damages related to CBL's statement because the statement is a true fact and Three Arrows has already admitted to it.

Three Arrows responds that the statement refers to "three arrows testing," not "CBL's testing," and that Three Arrows' allegation that CBL breached the NDA by publicizing Three Arrows' confidential test results, taken as true, plausibly states a claim for relief.

Three Arrows alleges that CBL breached the NDA when it stated publicly, again on Reddit, that "[r]ecent updates to three arrows ingredients/testing publishings have shown it actually does not contain any heme iron."  Countercl. (ECF No. 10) ¶ 16.  Three Arrows asserts that "[a]ny 'Three Arrows . . . testing publishings' CBL has in its possession were produced pursuant to the NDA in the First [Lawsuit] and were marked CONFIDENTIAL,"

- 27 -

*id.*, and that CBL breached the NDA by publicly disclosing this confidential information.

The court holds that Three Arrows has alleged sufficient facts to plausibly plead a counterclaim for breach of the NDA. Although the challenged statement may be susceptible to more than one interpretation, it is at least plausible that it revealed confidential information, i.e., the results of Three Arrows' testing publishings. Regarding damages, the court must accept factual allegations of Three Arrows' counterclaim as true; it cannot determine at the motion to dismiss stage whether or not CBL's statement regarding testing is in fact true, and thus precludes Three Arrows from establishing damages.

Accordingly, the court denies CBL's motion to dismiss CBL's counterclaim for breach of the NDA.

IX

The court now considers Three Arrows' Lanham Act unfair competition counterclaim. CBL moves to dismiss this counterclaim under Rule 12(b)(6) for failure to state a claim and lack of statutory standing under the Lanham Act and under Rule 12(b)(1) for lack of constitutional standing.

A

The court begins, as it must,[20] with CBL's Rule 12(b)(1) motion to dismiss Three Arrows' Lanham Act counterclaim for lack of constitutional standing.

_____

[20]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

- 28 -

1

The standing doctrine addresses the question of who may properly bring suit in federal court, and "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must meet both constitutional and prudential requirements. *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). CBL contends that Three Arrows lacks constitutional standing, which requires that Three Arrows establish that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Defenders of Wildlife*, 504 U.S. at 560). The plaintiff, or in this case, the counterplaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

A Rule 12(b)(1) motion can mount either a facial or factual challenge to jurisdiction. *See, e.g.*, *Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). If the party merely files its Rule 12(b)(1) motion, it is considered a facial attack, and the court looks only at the sufficiency of the allegations in the pleading and assumes them to be true. *Id.* If the allegations are sufficient to allege jurisdiction, the court must deny the motion. *Id.* This is akin to a Rule 12(b)(6) motion in that the "pleading's allegations are

- 29 -

presumed to be true, and '[i]f those allegations sufficiently allege a claim for recovery the complaint stands and the federal court must entertain the suit.'" *Id.* (quoting *Vinmar Overseas, Ltd. v. OceanConnect, LLC*, 2012 WL 3599486, at *4 (S.D. Tex. Aug. 20, 2012)).

A party can also make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *Id.* (citation omitted). "A factual attack on the subject matter jurisdiction of the court, however, challenges the facts on which jurisdiction depends and matters outside of the pleadings, such as affidavits and testimony, are considered." *Vinmar Overseas*, 2012 WL 3599486, at *4 (quoting *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. Unit A Apr. 1981)). The court deems the instant motion to present a facial challenge.

2

Three Arrows bases its Lanham Act counterclaim on the following allegations: (1) CBL represents that it is the only domestic manufacturer of Heme Iron when at least one other competitor, the manufacturer of Promix, advertises that its Heme Iron product is made in the United States; and (2) CBL represents that one of its Proferrin products contains 10.5 mg of Heme Iron Polypeptide per capsule, when testing shows that, on average, these capsules have fewer than 10 mg of Heme Iron.

CBL contends that Three Arrows has not pleaded facts that plausibly support the constitutional requirements for standing with respect to its Lanham Act counterclaim because Three Arrows is not a domestic manufacturer of Heme Iron products and is not permitted to sell any product that is represented to contain any amount of Heme Iron; Three Arrows

cannot plausibly allege a connection between CBL's alleged Lanham Act violations and "any injury directly suffered by Three Arrows (as opposed to companies that actually make United States-manufactured Heme Iron products)," P. Br. (ECF No. 12) at 14; and Three Arrows cannot plausibly allege that remedying CBL's alleged Lanham Act violations would be likely to eliminate any harm suffered by Three Arrows.

Three Arrows responds that, as a competitor in the marketplace, it has standing to sue for CBL's Lanham Act violations. It contends that CBL's representation that it is the only Heme Iron manufacturer in the United States has caused customers to withhold trade from Three Arrows, a competitor in the same industry; that Three Arrows' products are also made in the United States and thus, Three Arrows is clearly within the class of commercial actors with standing to bring this counterclaim; that "Three Arrows, as a competitor and U.S.-based manufacturer in the iron supplement market, alleges that CBL's false and misleading statements deceived customers who would otherwise have purchased Three Arrows' products but for CBL's deception," D. Br. (ECF No. 21) at 12; and that damages would remedy its loss through an injunction and monetary damages.

3

Three Arrows has alleged facts that, accepted as true, establish constitutional standing to bring its Lanham Act counterclaim. Although Three Arrows alleges that CBL's conduct "dilut[es] the value of other United States-manufactured *heme iron products*," Countercl. (ECF No. 10) ¶ 34 (emphasis added), it also alleges that "CBL's false and misleading claims are designed to entice consumers to purchase CBL's products over Three Arrows[']," and

that "CBL's customers would buy Three Arrows' products but for CBL's misrepresentations," *id.* ¶ 20.  Three Arrows also asserts that "[t]he natural, probable, and foreseeable result of CBL's conduct is to cause confusion and deception in the supplement industry and to deprive Three Arrows of business and goodwill, and to injure Three Arrows' relationships with existing and prospective customers." *Id.* ¶ 21.  Three Arrows has therefore adequately alleged competitive injury within the entire iron supplement market, not just the market for products containing Heme Iron.  Three Arrows' allegations, taken as true, are sufficient to establish that Three Arrows has suffered an injury in fact that is fairly traceable to CBL's conduct, i.e., the loss of its own customers as a result of CBL's misrepresentations. And Three Arrows alleges that, unless CBL is enjoined, Three Arrows' market with distributors, retailers, and consumers will be damaged and it "will lose money, lose sales to CBL, and lose market share to CBL." *Id.* ¶¶ 35-36.  In other words, Three Arrows has sufficiently pleaded that an injunction will redress its alleged injury.

The court concludes that Three Arrows has established constitutional standing with respect to its Lanham Act counterclaim.  Accordingly, CBL's Rule 12(b)(1) motion to dismiss for lack of constitutional standing is denied.

B

For largely the same reasons, the court concludes that Three Arrows has adequately pleaded that it has statutory standing under the Lanham Act.  Section 43(a) of the Lanham Act provides a cause of action for "unfair competition through misleading advertising or labeling."  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (citing 15

U.S.C. § 1125(a). This section of the Lanham Act provides protection against myriad deceptive commercial practices, including false advertising or promotion. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citation omitted). A plaintiff may sue a competitor when that competitor's advertisements misrepresent the qualities or characteristics of its own goods or products or of the plaintiff's goods or products. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 137-38 (2014) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 799 n.24 (5th Cir. 2011)).

The Lanham Act "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." *Id.* at 129 (quoting 15 U.S.C. § 1125(a)(1)). It provides a civil cause of action against any person who, in connection with goods or services, uses any "false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125(a)(1). But not everyone with Article III standing can bring a false advertising claim under the Lanham Act. *Lexmark*, 572 U.S. at 129. In *Lexmark* the Court set out a two-part test for determining whether a plaintiff can sue under the Lanham Act: (1) the "zone-of-interests test," and (2) the "proximate-cause requirement." *Id.* at 134.

Relying on the text of the Lanham Act, the Court in *Lexmark* concluded that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 132. The "proximate-cause requirement" for statutory standing "generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Id.* at 133. To satisfy this

- 33 -

requirement,

> a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff. That showing is generally not made when the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff. For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitor's "inability to meet [its] financial obligations."

*Id.* at 133-34 (alteration in original) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presum[es] that general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife*, 504 U.S. at 561 (citation and internal quotation marks omitted).

Three Arrows' alleged injuries—the loss of customers, confusion and deception in the supplement industry, and the deprivation "of business and good will"—are injuries to precisely the sorts of commercial interests the Act protects. Three Arrows is not suing as a deceived consumer, or even, as CBL suggests, on behalf of other manufacturers of Heme Iron supplements, but as a competitor whose position in the marketplace has allegedly been damaged by CBL's false advertising as to the substance and exclusivity of its product. Three Arrows' allegations, taken as true, are sufficient to plausibly allege statutory standing under the Lanham Act.

C

Finally, the court denies CBL's motion to dismiss Three Arrows' Lanham Act counterclaim under Rule 12(b)(6). CBL contends that, because Three Arrows does not allege that it is a domestic manufacturer of Heme Iron, there can be no proximate relationship between CBL's alleged misrepresentations and a direct loss suffered by Three Arrows, and that

> Three Arrows acknowledges that the only person or entity who could be directly impacted by CBL's alleged misrepresentations are a "United States-based manufacturer of heme iron products[.]" Three Arrows is neither. Three Arrows does not allege that it is a United States-based manufacturer of anything, and it is prohibited from claiming to be a manufacturer of Heme Iron products. . . . Thus . . . Three Arrows is not a "person who believes that he or she is likely to be damaged" from CBL's alleged misstatements as required by the Lanham Act.

D. Br. (ECF No. 12) at 12 (citations omitted). But as explained above, Three Arrows alleges that it has been injured by CBL's conduct, asserting that "CBL's false and misleading claims are designed to entice consumers to purchase CBL's products over Three Arrows[']," that "CBL's customers would buy Three Arrows' products but for CBL's misrepresentations," and that "[t]he natural, probable, and foreseeable result of CBL's conduct is to cause confusion and deception in the supplement industry and to deprive Three Arrows of business and goodwill, and to injure Three Arrows' relationships with existing and prospective customers." Countercl. (ECF No. 10) ¶¶ 20-21. These allegations are sufficient to plausibly allege that Three Arrows has been injured by CBL's conduct.

The court therefore denies CBL's motion to dismiss Three Arrows' Lanham Act

counterclaim.

## X

### A

CBL requests that, if the court determines that any part of Three Arrows' motion to dismiss is meritorious or that any of CBL's claims, or any portion of a claim, should be dismissed, it be granted leave to amend its complaint to plead additional facts in support of any such claim or portion of a claim. The court grants the request. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002))). There is no indication that CBL cannot, or is unwilling to, cure the defects in its complaint. As noted, CBL expressly requests leave amend if its complaint is deemed deficient. The court therefore grants CBL 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

### B

Three Arrows also requests that the court grant it leave to replead if the court grants any portion of CBL's motion. Because the court has denied CBL's motion as to all challenged counterclaims, the court denies this request without prejudice as moot.

*    *    *

Accordingly, for the reasons explained, the court grants in part and denies in part Three Arrows' motion to dismiss CBL's claims and denies CBL's motion to dismiss Three Arrows' counterclaims.  The court grants CBL 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

**SO ORDERED**.

September 2, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE