IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

COLORADO BIOLABS, INC.,                §
                                       §
      Plaintiff-Counterdefendant,      §
                                       §
VS.                                    §    Civil Action No. 3:25-CV-0601-D
                                       §
THREE ARROWS NUTRA, LLC,               §
                                       §
      Defendant-Counterplaintiff.      §

MEMORANDUM OPINION
AND ORDER

Defendant-counterplaintiff Three Arrows Nutra, LLC ("Three Arrows") moves to compel discovery from plaintiff-counterdefendant Colorado Biolabs, Inc. ("CBL") and requests an award of attorney's fees associated with the motion to compel. CBL moves for leave to file supplemental evidence. For the reasons that follow, the court grants in part and denies in part Three Arrows' motion to compel and denies its request for attorney's fees. The court grants CBL's motion for leave to file supplemental evidence.

I

CBL and Three Arrows are competitors in the iron supplement industry. In 2023 CBL sued Three Arrows, asserting claims for false advertising and unfair competition based on Three Arrows' alleged misrepresentation that its products contained Heme Iron sourced from bovine blood. CBL and Three Arrows eventually entered into a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement") under which Three Arrows agreed, *inter alia*, that it would re-label and re-brand its products to eliminate all

representations that they constitute or contain Heme Iron; that it would not represent, expressly or by implication, that its products contain Heme Iron; and that neither party would disparage the other party or its employees, products, or services.

In March 2025 CBL filed the instant lawsuit, alleging that Three Arrows has failed to comply with its obligations under the Settlement Agreement and asserting claims for breach of the Settlement Agreement, false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition and business disparagement. Three Arrows counterclaims against CBL for breach of the Settlement Agreement, breach of the parties' Non-Disclosure Agreement, and unfair competition under common law and the Lanham Act.

On June 9, 2025 Three Arrows served CBL its first requests for production and first set of interrogatories ("First Discovery Requests") and on September 9, 2025 it served its second requests for production and second set of interrogatories ("Second Discovery Requests."). Three Arrows maintains that CBL's responses to the First and Second Discovery Requests are deficient. Accordingly, it has filed the instant motion to compel. CBL opposes the motion, which the court is deciding on the briefs, without oral argument.

II

The court begins by addressing CBL's motion for leave to file supplemental evidence. CBL filed its response to Three Arrows' motion to compel on January 2, 2026. On January 7, 2026 (nine days before Three Arrows' reply in support of its motion to compel was due), CBL filed the instant motion for leave to file a supplemental evidence. CBL seeks to

- 2 -

supplement its response appendix with the declaration of Adam Kashenberg ("Kashenberg"), its Chief Executive Officer, as additional support, *inter alia*, for its argument that Requests for Production ("RFP") Nos. 9 and 10 are "overburdensome and not proportionate to the needs of the case." D. Br. (ECF No. 44) at 2. Three Arrows opposes the motion on the grounds that CBL should not be permitted to use the Kashenberg declaration to retroactively cure deficiencies in its discovery objections, and that CBL's untimely submission prejudices Three Arrows because it was filed after Three Arrows "was forced to brief its Motion to Compel without the benefit of the factual explanations CBL now offers to justify its boilerplate overbreadth and proportional objections," D. Br. (ECF No. 47) at 5.

The court grants CBL's motion and grants CBL leave to file the supplemental evidence. CBL filed the motion five days after it filed its response brief, and Three Arrows had a fair opportunity to reply to the Kashenberg declaration (ECF No. 45-1) when it filed its reply brief. The court therefore deems the declaration to be part of the motion record.

III

The court now turns to Three Arrows' motion to compel.

Under Fed. R. Civ. P. 26(b)(1), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." And, under Rule 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" when the party from whom discovery is sought fails to produce requested documents or respond to an interrogatory or request for admission. The burden

- 3 -

is on the party resisting discovery—here, CBL—to establish why the motion to compel should not be granted. *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (Ramirez, J.); *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powell and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

IV

Three Arrows moves the court to overrule CBL's "Objections to Instructions and Definitions" ("General Objections"); to overrule CBL's "discrete subparts" objection to Interrogatories Nos. 12, 19, 23, and 24; and to compel full and complete answers to these Interrogatories. CBL responds that the court should deny these grounds of Three Arrows' motion because Three Arrows failed to confer with CBL regarding them.

A

Rule 37(a) requires that a motion to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." "When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties discuss each matter in good faith to comply with conference requirements." *Brown*

- 4 -

*v. Bridges*, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015) (Solis, C.J.) (citing *Anzures v. Prologis Tex. I LLC*, 300 F.R.D. 314, 316 (W.D. Tex. 2012)); *see also Alt Platform, Inc. v. Beckett Collectibles, LLC*, 2025 WL 836049, at *2 (N.D. Tex. Mar. 17, 2025) (Godbey, C.J.) (declining to compel further production when moving party sought to have objections overruled but had not previously raised the issue in any of its four deficiency letters to opposing party). "Failure to confer generally serves as a basis for denying a discovery motion." *Brown*, 2015 WL 11121361, at *3 (quoting *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 245 (D. Kan. 2010)).

B

The certificate of conference included in Three Arrows' motion to compel states:

> [o]n September 9, 2025, Defendant sent correspondence to counsel for Plaintiffs regarding the deficiencies in Plaintiff's discovery responses and productions. On October 9, 2025, Defendant's counsel sent correspondence in further discussion of Plaintiff's discovery deficiencies. On October 16, 2025, the counsel for both Parties engaged in a lengthy meet and confer by video conference in an attempt to resolve the relief requested via this Motion. On October 30, 2025, counsel for Defendant sent correspondence to counsel for Plaintiff regarding further discovery deficiencies. On November 10, 2025, counsel for Plaintiff sent responsive correspondence to counsel for Defendant.

D. Br. (ECF No. 41) at 25. Despite these apparent attempts to resolve the parties' discovery disputes, CBL contends that Three Arrows failed to confer with it regarding "the issues Three Arrows takes with (i) CBL's so-called 'general objections' . . . , and (ii) CBL's objections that Interrogatories No. 12, 19, 23, and 24 contain discrete subparts." P. Br. (ECF

No. 42) at 6.

Three Arrows replies that "CBL has been sufficiently notified of which discovery responses would be at issue in Three Arrows' Motion, and CBL has unambiguously and consistently stood on its objections, which are now at issue in Three Arrows' Motion."  D. Reply (ECF No. 48) at 3.

C

Based on the certificate of conference or the evidence attached to Three Arrows' reply brief—which it did not obtain leave of court to file[1]—the court is unable to determine whether Three Arrows conferred with CBL regarding its General Objections or discrete subparts objections.  But assuming that it did, the court nevertheless denies this ground of Three Arrows' motion to compel because it appears that CBL has not withheld information based on either objection.

Regarding its General Objections,[2] CBL contends that they "merely reflect [CBL's]

---

[1]*See, e.g.*, *Budri v. FirstFleet Inc*., 2020 WL 10816627, at \*2 (N.D. Tex. June 10, 2020) (Ramirez, J.) (citations omitted) (a movant is not "ordinarily permitted to introduce new evidence in support of a reply because such action would deprive the non-movant of a meaningful opportunity to respond").

[2]In its responses to Three Arrows' First and Second Discovery Requests, CBL includes the following General Objections:

> Plaintiff states the following [General Objections] with respect to each and every Request for Production made by Defendant. The [General Objections] shall be incorporated by reference in the response to each such Request for Production.  The specific objections included within a response to a Request for Production are intended to supplement the [General Objections]

intent to fulfill its obligations to respond to Three Arrows' discovery requests in good faith and reserve its right to amend and supplement its specific objections and responses in accordance with the federal rules." P. Br. (ECF No. 42) at 6. With respect to the interrogatories to which CBL objects on the basis that they contain discrete subparts, CBL has provided responses to each interrogatory "subject to" the objection, *see* D. App. (ECF No. 41-1) at 13, 17, 18-19, and clarifies in its response that it has not withheld any discovery based on the "subject to" objections, P. Br. (ECF No. 42) at 10.

Accordingly, the court denies this ground of Three Arrows' motion to compel.

V

Three Arrows moves to compel responses to Interrogatories Nos. 3, 14, 17, and 18 and RFP Nos. 11, 13, 33, and 35 on the ground that CBL's objections are generic, vague, and ambiguous and do not provide specific grounds or explanations. CBL responds that it

> has already informed Three Arrows that, except for the documents described [in its response], CBL is not withholding any documents or information based on the objections complained about in section D of the Motion to Compel. CBL

---

> and shall not limit the applicability of the [General Objections] to each such Request for Production.
>
> Plaintiff has made reasonable efforts to respond to these Requests for Production based on its reasonable interpretation of same. If Defendant subsequently asserts an interpretation of any Request for Production that differs from Plaintiff's interpretation, then Plaintiff reserves the right to further supplement and/or amend these Objections and Responses.

D. App. (ECF No. 41-1) at 1 (paragraph numbering omitted).

> has informed Three Arrows, and also explains [in its response] why the withheld documents and information are not discoverable. There is no need for the Court to rule upon objections *that are not being relied upon to withhold discovery*.

P. Br. (ECF No. 42) at 10 (emphasis added) (citation omitted).

Because CBL has confirmed that it has not withheld any information based on its so-called "boilerplate objections and 'subject to' responses,"—and Three Arrows concedes in its reply that this ground of its motion is moot, *see* D. Reply (ECF No. 48) at 7—the court denies this ground of Three Arrows' motion to compel.

## VI

Three Arrows moves to compel CBL to produce complete and itemized financial data, as requested in RFP Nos. 9 and 10.

## A

RFP No. 9 requests "[a]ll documents and communications related to the sales of the CBL Products from 2021 to present, including but not limited to sales reports, sales data, invoices, purchase orders, and bills of lading." D. App. (ECF No. 41-1) at 3. RFP No. 10 requests "[a]ll documents and communications evidencing CBL's revenue and profits from the sale of CBL Products." *Id.* at 4.

In response to RFP Nos. 9 and 10, CBL produced a one-page document that compiles the net income for one of its products (Proferrin Clear) from May 31, 2024 through October 23, 2025. It objects to both requests

on the grounds that [they are] overbroad, unduly burdensome, not proportional to the needs of the case, and seek[] information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  More specifically, none of CBL's claims provides proper grounds for the discovery of the documents sought by th[ese] Request[s].

*Id.* at 3-4.

B

Three Arrows moves to compel CBL to produce complete and itemized financial data, contending that CBL's production is "woefully deficient."  D. Br. (ECF No. 41) at 13.  It maintains that gross sales and attendant expenses are relevant to the calculation of damages with respect to both parties' Lanham Act claims; that information related to CBL's sales around the time of the social media posts that allegedly breached the Settlement Agreement are clearly relevant to fully evaluate CBL's alleged damages; that CBL should be required to produce its financial information at the level of granularity available to CBL in its ordinary course of business, not in summary fashion; and that the court should order CBL to produce comprehensive daily sales data for all of its Heme Iron products in such detail that CBL's profits can be readily ascertained.

CBL responds that Three Arrows has failed to explain the relevance of its requests; that requiring CBL to locate, review, and produce "all" such documents and communications covering a period of more than three years before the Settlement Agreement's effective date and spanning more than four years in total would be "grossly overburdensome" and not proportionate to the needs of the case; that, "attempting to respond in good faith," CBL

produced documentation reflecting all sales of its Proferrin Clear product in the United States from the relevant date of the Settlement Agreement to the present; and that CBL's counsel informed Three Arrows that CBL is willing to search for further documentation regarding its alleged damages if Three Arrows' counsel would identify the particular information it seeks in RFP Nos. 9 and 10, but that Three Arrows failed to provide any meaningful clarification.[3]  P. Br. (ECF No. 42) at 10-11.

C

To the extent that CBL is withholding documents responsive to RFP Nos. 9 and 10 on relevance grounds, CBL has not established that the requested documents are not relevant. As stated above, the burden is on the party *resisting* discovery to establish why the motion to compel should not be granted.  *Merrill*, 227 F.R.D. at 470.  In its response, CBL argues only that "[t]he Motion to Compel fails to explain the relevance of the vaguely described '*all* documents and communications' or the equally vaguely described 'comprehensive daily sales data for all of its heme iron' which Three Arrows seeks (and presumes exists) in its Motion to Compel."  P. Br. (ECF No. 42) at 10.  CBL neither argues nor establishes that the discovery Three Arrows seeks in RFP Nos. 9 and 10 is irrelevant.

---

[3]In its reply, Three Arrows contends that, on December 9, 2025, it asked CBL to confirm via email whether it "is unwilling to produce any additional financial data including, but not limited to, income for CBL's other heme iron products, expenses for any heme iron product, income statements, balance sheets, complete profit and loss reports, invoices, purchase orders, or any information from which CBL's revenue and profits for its heme iron products may be calculated," and that CBL did not provide this information.  D. Reply (ECF No. 48) at 8 (emphasis omitted).

D

The court now turns to CBL's contention that RFP Nos. 9 and 10 are "grossly overburdensome and not proportionate to the needs of the case." *Id.*

1

As with CBL's relevance objection, a party opposing discovery on the basis that it is unduly burdensome "bears the burden of showing why discovery should be denied." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (Ramirez, J.) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). "In order to satisfy its burden, the objecting party must make a specific, detailed showing of how a request is burdensome." *Id.* (citation omitted). "A mere statement by a party that a request is 'overly broad and unduly burdensome' is not adequate to voice a successful objection." *United States v. Umbrella Fin. Servs., LLC*, 2024 WL 117153, at *1 (N.D. Tex. Jan. 10, 2024) (Fitzwater, J.) (quoting *Brady*, 238 F.R.D. at 437). "[A] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Id.* (quoting *Brady*, 238 F.R.D. at 437).

2

In support of its response, CBL has produced the declaration of Kashenberg, its Chief Executive Officer. With respect to RFP Nos. 9 and 10, Kashenberg explains that

> CBL's revenue comes from literally tens of thousands of individual transactions, including several thousand every day. The volume of documents relating to each individual CBL sales transaction, such as "invoices, purchase orders, and bills of lading," from January 1, 2021 to present—whether for just

> Proferrin Clear or for all Proferrin products—would be massive and extremely burdensome to locate, download, coordinate, and produce. . . .
>
> CBL currently uses a cloud-based version of Quickbooks Enterprise to manage its accounting and financial information. CBL also implemented new inventory software (Fishbowl Inventory) in approximately the last 3 years. Prior to this, all of CBL's sales and other financial information prior to that transition resides on two physical servers. Those physical servers run on a old version of Microsoft Windows that is no longer supported.
>
> Given the vast volume and scope of financial and sales documents and information that Three Arrows has demanded, I estimate that it would require a CBL accounting team staff member to spend two full work weeks (approximately 80 hours) to locate and download or print each such document. Additionally, because of the technical challenges associated with the legacy financial information on the physical servers, I estimate that it would also require a CBL information technology team member to spend approximately 20-30 hours to resolve technical access issues.

P. App. (ECF No. 45-1) at 3-4 (paragraph numbering omitted).

CBL has demonstrated that it would be unduly burdensome to produce its daily sales data (i.e., *all* invoices, purchase orders, and bills of lading) for all of its products, from January 1, 2021 to the present. But it has not demonstrated that it would be unduly burdensome to produce the financial data stored in Quickbooks Enterprise or Fishbowl Inventory. Nor has it established that it would be unduly burdensome to produce the requested financial information (for all products, for the time period requested) "at the level of granularity available to CBL in its ordinary course of business." D. Br. (ECF No. 41) at 14. For example, CBL has not shown that it would be unduly burdensome to produce the

following financial data: "income for CBL's other heme iron products, expenses for any heme iron product, income statements, balance sheets, complete profit and loss reports . . . or any information from which CBL's revenue and profits for its heme iron products may be calculated."  D. Reply (ECF No. 48) at 8 (emphasis omitted).

Accordingly, the court denies this ground of Three Arrows' motion to the extent that it requests *daily* financial information that pre-dates CBL's current accounting and inventory software, but it otherwise grants the motion.

VII

Three Arrows moves to compel CBL to identify the specific documents it has produced that form the basis for its allegations against Three Arrows relating to violations of the Settlement Agreement and its Lanham Act claims.

A

Three Arrows contends that, in response to its RFPs seeking statements by Three Arrows that CBL believes breach the parties' Settlement Agreement or the Lanham Act, CBL produced over 11,000 pages of documents that include screenshots of various websites, social media posts, and hours of podcast recordings and transcripts of a potential third-party witness.  To clarify which of the more than 11,000 pages of material violates the Settlement Agreement or Lanham Act, Three Arrows requested, in Interrogatory No. 19:

> Identify all statements made by Three Arrows that you contend violate the Settlement Agreement or the Lanham Act.  A complete answer will include the bates number of each document produced that contains the statement (including but not limited to within CBL's production bates-labeled CB-

000001 through CB-011702), an identification of the specific statement CBL alleges violate[s] the Settlement Agreement or the Lanham Act, and an identification of the Settlement Agreement or Lanham Act provision CBL alleges the identified statement violates.

D. App. (ECF No. 41-1) at 17.  CBL responded, in pertinent part that

the statements by Three Arrows that violate the Settlement Agreement or the Lanham Act are set forth verbatim in Paragraphs 33-68 of Plaintiff's Original Complaint.   The provisions of the Settlement Agreement breached by Three Arrows are set forth in Paragraphs 30 and 31 of Plaintiff's Original Complaint.  The provisions of the Lanham Act violated by Three Arrows are set forth in Paragraphs 93-99 of Plaintiff's Original Complaint.

*Id.*

B

Three Arrows moves to compel CBL to identify which specific documents it has produced that form the basis for its allegations against Three Arrows.

CBL responds that requiring it to review "all documents produced in this case to log them for Three Arrows would be unduly burdensome for CBL and not proportionate to the needs of the case."  P. Br. (ECF No. 42) at 11-12.  In support, CBL cites the declaration of its attorney, who avers:

To date, CBL has collected and produced approximately 5,468 documents, consisting of at least 12,516 pages to Three Arrows. Estimating a review time of 30 seconds per page, I estimate that it would take 92 hours to review and log those documents for Three Arrows, which is the only means CBL would have to provide the level of specificity requested . . . [in] Interrogatory No. 19.  That estimate does not include the amount of time it would take CBL to review additional documents produced in this litigation, including those produced by Three Arrows, for

responsive Bates numbers.

> Moreover, each statement that CBL alleges to violate the Settlement Agreement or the Lanham Act is specifically identified, reproduced, and quoted in CBL's Original Complaint (Dkt. 1). CBL is not currently aware of, and does not allege, any statement that constitutes a breach of the Settlement Agreement or the Lanham Act by Three Arrows other than those that are expressly identified and set forth in its Original Complaint.

P. App. (ECF No. 43-1) at 2-3 (paragraph numbers omitted).

## C

CBL has demonstrated that it would be unduly burdensome to review all of the documents that it produced to date in order to identify those that contain statements that CBL believes violate the Settlement Agreement or Lanham Act. But it has not shown that it would be unduly burdensome to produce a complete copy of each document that contains a statement that it refers to in its original complaint. Accordingly, the court orders CBL to either identify, by bates number, the documents that it has already produced that contain the statements CBL refers to in paragraphs 33-68 of the original complaint, or to produce new copies of these documents if CBL deems it cumbersome to locate them within the 12,516 pages it has already produced.

## VIII

Three Arrows moves to compel CBL to produce documents responsive to RFP Nos. 3, 4, 6, 8, 17 and 34 and responses to Interrogatories Nos. 2 and 20 with respect to *all* of CBL's iron supplements.

- 15 -

A

CBL has produced documents responsive to RFP Nos. 3, 4, 6, 8, 17 and 34 with respect to only one of its products: Proferrin Clear.  Three Arrows moves to compel responsive documents with respect to *all* of CBL's iron supplement products.  It contends that the full scope of CBL's testing procedures for its Heme Iron products is relevant because the reliability of those procedures is at issue and discrepancies or similarities in testing procedures across CBL's Heme Iron products and the results such tests produce speaks to the reliability and accuracy of CBL's procedures.[4]

CBL responds that neither the complaint nor counterclaims contain any allegation that could justify the disclosure of confidential, commercially sensitive, and proprietary information[5] about any CBL product other than Proferrin Clear, and that Three Arrows has failed to carry its burden to show otherwise; that while receiving different test results under the same procedures for the *same* product might speak to reliability, using different tests or receiving different test results for *different* products does not necessarily weigh on reliability; and that although the amount of iron in Proferrin Clear is at issue, the reliability of CBL's testing procedures is not.

---

[4]Three Arrows also moved to compel documents relating to the clinical documentation CBL referenced in certain social media communications.  On December 10, 2025 CBL produced its "clinical documentation."  Accordingly, Three Arrows has withdrawn this ground of its motion to compel.

[5]To the extent that CBL suggests that the discovery Three Arrows seeks is confidential, commercially sensitive, and proprietary, it has not established that the parties' agreed protective order is insufficient to protect its confidential information.

B

CBL has failed to carry its burden to show that Three Arrows' requests are not relevant. In support of its counterclaims, Three Arrows alleges that CBL is misleading customers about the substance of its own product by representing that each capsule of Proferrin Clear contains 10.5 mg of Heme Iron polypeptide when testing shows that, on average, Proferrin Clear capsules actually have fewer than 10 mg of Heme Iron. CBL disputes this allegation. If CBL attempts to use its own internal testing procedures to establish that its products do, in fact, contain the amount of Heme Iron it represents, then the reliability of CBL's testing procedures could become an issue. CBL's testing procedures across *all* of its Heme Iron products is relevant to whether CBL's testing procedures, both as a whole and with respect to Proferrin Clear, are reliable.

Accordingly, the court grants Three Arrows' motion to compel CBL to produce documents related to the testing of all the CBL products in response to RFP Nos. 3, 4, 6, 8, 17, and 34 and Interrogatories Nos. 2 and 20.

IX

Three Arrows moves to compel documents responsive to RFP Nos. 3, 7, 23, and 24 regarding the source or origin of the components of CBL's products.

A

In response to RFP Nos. 3, 7, 23, and 24, CBL produced Certificates of Analysis for Proferrin Clear that state that the country of origin for the completed product is the United States. Three Arrows contends that, because this document does not speak to the origin of

- 17 -

any of the component parts of Proferrin Clear, including Heme Iron, it is an incomplete discovery response.

CBL responds that Three Arrows' discovery requests are facially irrelevant, overbroad, unduly burdensome, and lacking in proportionality because, for example:

> the source of the ingredients of CBL's products has nothing to do with whether Proferrin is the only Heme Iron available in the U.S. as an iron supplement or whether another company also manufactures Heme Iron supplements in the United States. Stated differently, the constituent ingredients of CBL's products has no bearing on where CBL's products or any other company's products are manufactured or sold.

P. Br. (ECF No. 42) at 14.

## B

CBL has established that Three Arrows' discovery requests that seek information regarding the country of origin of each component of CBL's Heme Iron supplements is not relevant. In its counterclaims, Three Arrows alleges:

> In its "Frequently Asked Questions" panel on its website, CBL claims that it is the only company that manufacturers heme iron in the United States.
>
> • Does anyone else manufacture heme iron? (US or abroad?)
>
> Not in the U.S. but in the past other international companies produced a similar product.

Am. Countercl. ¶ 17 (bold font omitted) (footnote omitted); *see also id.* ¶ 41 ("CBL also claims that it is the only company that manufactures Heme Iron in the United States. On information and belief, that is also false."). The source of the ingredients of CBL's products

- 18 -

is not relevant to the question whether CBL falsely represented that it was the only company that *manufactures* Heme Iron in the United States.

Accordingly, the court denies Three Arrows' motion to compel CBL to produce documents that identify the source of the ingredients for the CBL products in response to RFP Nos. 3, 7, 23, and 24.

X

Three Arrows moves for an award of attorneys's fees. Under Rule 37(a)(5)(C), if a motion to compel "is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may . . . apportion the reasonable expenses for the motion." Rule 37(a)(5)(C). But "the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified[.]" Rule 37(a)(5)(A). "A motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. 2018) (Horan, J.) (brackets omitted).

Here, CBL's objections to Three Arrows' discovery requests were largely justified (and for those that were not, CBL did not withhold discovery based on them). While not all of CBL's objections were well-taken, CBL ultimately had meritorious reasons for objecting to the discovery requests that formed the basis of Three Arrows' motion to compel. Accordingly, the court in its discretion denies Three Arrows' motion for attorney's fees. *See, e.g.*, *Ayangbile v. Children's Health Servs. of Tex.*, 2025 WL 1182089, at *7 (N.D. Tex. Apr. 22, 2025) (Godbey, C.J.) ("If the motion [to compel] is granted in part and denied in part, the

court may apportion expenses for the motion at its discretion.").

*   *   *

Accordingly, for the reasons explained, the court grants CBL's motion for leave to file supplemental evidence; grants in part and denies in part Three Arrows' motion to compel; and denies Three Arrows' request for attorney's fees.  CBL must supplement its discovery responses within 21 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

March 26, 2026.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE