IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLORADO BIOLABS, INC., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | |
| VS. | § | Civil Action No. 3:25-CV-0601-D |
| | § | |
| THREE ARROWS NUTRA, LLC, | § | |
| | § | |
| Defendant-Counterplaintiff. | § | |

MEMORANDUM OPINION
AND ORDER

In this lawsuit alleging claims under the Lanham Act and Texas common law, defendant-counterplaintiff Three Arrows Nutra, LLC ("Three Arrows") moves for partial summary judgment on the claims of plaintiff-counterdefendant Colorado Biolabs, Inc. ("CBL") and moves to exclude and strike the opinions of CBL's expert and non-retained expert. For the reasons that follow, the court grants in part and denies in part Three Arrows' motion for partial summary judgment and denies without prejudice Three Arrows' motions to exclude and strike.[1]

I

CBL manufactures, markets, and sells Heme Iron[2] supplements under the name

[1] Although the parties have made sealed filings related to these motions, the court has determined that this memorandum opinion and order need not be sealed.

[2] As the court has previously explained:

> Heme Iron is developed from animal sources and has a much higher absorption rate than Non-Heme Iron. It can be taken

"Proferrin."[3] CBL's competitor, Three Arrows, also develops, markets, and sells iron supplements. Prior to the events giving rise to this lawsuit, Three Arrows labeled and marketed its "IronRepair *Simply Heme*" and "IronRepair *Heme Plus*" products as containing 20 mg of Heme Iron.

Beginning in August 2021, in-house and third-party testing[4] by CBL confirmed that Heme Iron was "not detectable" in Three Arrows' IronRepair products. P. Br. (ECF No. 84) at 7. Accordingly, "to protect its brand, [to] protect the Heme Iron supplement market, and to remedy Three Arrows' ongoing Heme Iron misrepresentations regarding the IronRepair Products," CBL sued Three Arrows in the Eastern District of Texas ("First Lawsuit"), asserting claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). *Id.*

---

> with or without food and does not require a simultaneous dose of Vitamin C for absorption. Non-Heme Iron, by contrast, is generally developed from plant sources and has a much lower rate of absorption than Heme Iron. A person taking a Non-Heme Iron supplement generally must take it on an empty stomach and with a Vitamin C supplement.

*Colorado Biolabs, Inc. v. Three Arrows Nutra, LLC* (*Colorado Biolabs I*), 2025 WL 2524313, at *1 n.1 (N.D. Tex. Sept. 2, 2025) (Fitzwater, J.)

[3]In recounting the factual background, the court summarizes the evidence in the light most favorable to CBL as the summary judgment nonmovant and draws all reasonable inferences in its favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

[4]Third-party testing was performed by CBL's non-retained expert, Hector A. Bergonia, who works at the Iron and Heme Core laboratory at the University of Utah.

Although Three Arrows disputed and denied liability in the First Lawsuit, the parties eventually entered into a Confidential Settlement Agreement and Mutual Release ("Settlement Agreement"), under which Three Arrows agreed (1) to pay CBL $400,000.00; (2) that, no later than September 1, 2024, it would re-label and re-brand the IronRepair products to eliminate all representations that the products constitute or contain Heme Iron ("Rebranding Obligation"); (3) that, beginning on September 1, 2024, Three Arrows would not represent, expressly or by implication, that the IronRepair products or any other Three Arrows products contain Heme Iron ("No-Misrepresentation Obligation"); and (4) that neither party would disparage the other party or its employees, products, or services ("Non-Disparagement Obligation"). CBL agreed to release Three Arrows from all claims "arising from or relating to the past or current branding, labeling, marketing, advertising, or sale of the IronRepair Products." D. App. (ECF No. 68) at 32.

Following the Settlement Agreement, Three Arrows renamed the IronRepair products "IronRepair *Plus*" and "IronRepair *Simply*." It contends that it also "scoured" its website, other online materials, and marketing materials to delete any references to the IronRepair products containing Heme Iron. CBL maintains that, despite these efforts, Three Arrows has materially failed to comply with its obligations under the Settlement Agreement.

CBL contends that Three Arrows has continued to state, represent, and imply on its website and Amazon storefront that its products contain Heme Iron; that Three Arrows' owner, Krystal Moore ("Moore"), has represented, "sometimes by misleading and deceptive doublespeak, and other times by bald-faced lies," that Three Arrows' products contain Heme

Iron; and that Three Arrows has used Brand Ambassador[5] Caitlyn R. Hartigan ("Hartigan"), who manages and administers the Iron Protocol Facebook Group,[6] "as a surrogate to spread its misinformation about both Three Arrows and CBL." P. Br. (ECF No. 84) at 9.

In March 2025 CBL filed the instant lawsuit, bringing claims for breach of the Settlement Agreement, false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), and common law unfair competition and business disparagement. These claims are based on allegations that Three Arrows failed to comply with its obligations under the Settlement Agreement, falsely represented that its IronRepair Products contain or constitute Heme Iron, and disparaged CBL.[7] Three Arrows moves for summary judgment on CBL's remaining claims.[8] It also moves to partially exclude expert testimony and to strike the expert report of CBL's expert, Dr. James. F. Collins ("Collins"), and to exclude and strike the opinions of CBL's non-retained expert, Hector A. Bergonia ("Bergonia"). CBL opposes the motions, which the court is deciding on the briefs, without oral argument.

---

[5]As a brand ambassador, Hartigan receives a commission when customers purchase IronRepair products using her discount code.

[6]The Iron Protocol Facebook Group is an online community focused on iron deficiency.

[7]Three Arrows counterclaims against CBL for breach of the Settlement Agreement, breach of the parties' September 25, 2023 Non-Disclosure Agreement, and unfair competition under common law and the Lanham Act, 15 U.S.C. § 1125(a).

[8]In *Colorado Biolabs I* the court dismissed CBL's claim for common law business disparagement. *Colorado Biolabs I* , 2025 WL 2524313, at *6.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts to demonstrate that there is a genuine issue of material fact for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen LandCare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court begins with CBL's claims for common law unfair competition and false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a).[9]

---

[9]Three Arrows contends in its motion that CBL's Lanham Act false advertising claims and common law unfair competition claims should be analyzed together. D. Br. (ECF No. 67) at 17. Because this appears to be the accepted practice in this circuit, the court will treat CBL's Lanham Act and common law unfair competition claims as coextensive for purposes of deciding Three Arrows' motion for summary judgment. *See, e.g.*, *Tercel Oilfield Prods. USA L.L.C. v. Alaskan Energy Res., Inc.*, 2014 WL 645380, at *4 (S.D. Tex. Feb. 19, 2014) ("Courts in the Fifth Circuit generally analyze a Lanham Act deceptive advertising claim and a Texas unfair competition claim together.").

A

Section 43(a) of the Lanham Act provides a cause of action against those who make a "false or misleading description of fact, or false or misleading representation of fact," which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). To prevail on a Lanham Act false advertising[10] claim, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

"There are two types of actionable statements under the Lanham Act: those that are literally false and those that, although not literally false, are likely to mislead and confuse consumers." *Greater Hous. Transp. Co. v. Uber Techs., Inc.*, 155 F.Supp.3d 670, 699 (S.D. Tex. 2015) (citing *Pizza Hut*, 227 F.3d at 495). If the statements at issue are shown to be

[10]Although the complaint alleges a claim for "false advertising and unfair competition" under 15 U.S.C. § 1125(a), CBL has not plausibly pleaded a claim for unfair competition under 15 U.S.C. § 1125(a)(1)(A), which "is intended to prevent confusion, mistake, or deception regarding the *source* of goods or services." *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, 2004 WL 833595, at *11 (N.D. Tex. Apr. 19, 2004) (Fish, C.J.) (citations omitted). But even if it has, "district courts in the Fifth Circuit usually apply the same five elements to claims under both subsections." *Postar v. Hyland*, 2026 WL 145934, at *12 (N.D. Tex. Jan. 20, 2026) (Hendrix, J.) (citing cases).

literally false, the "court must assume that the statements actually misled consumers, without requiring any evidence of their impact on consumers." *S & H Indus., Inc. v. Selander*, 932 F.Supp.2d 754, 762 (N.D. Tex. 2013) (Ramirez, J.) (citing *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001); *Pizza Hut*, 227 F.3d at 497), *rec. adopted*, 932 F.Supp.2d 754, 757 (N.D. Tex. 2013) (Lynn, J.). "If the statements are either ambiguous or literally true but misleading, there is no such presumption, and a plaintiff must present evidence of actual consumer deception." *Id.* (quoting *Pizza Hut*, 227 F.3d at 497). "[P]roof of actual deception requires proof that 'consumers were actually deceived by the defendant's ambiguous or true-but-misleading statements.'" *Pizza Hut*, 227 F.3d at 497 (quoting *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 616 (6th Cir. 1999)).

B

1

Three Arrows moves for summary judgment on CBL's Lanham Act claim based on the "Marketing Statements,"[11] contending that these statements are literally true and that CBL

---

[11]The "Marketing Statements" are the statements posted on the Iron Protocol Facebook Group that CBL contends imply that Three Arrows' products contain Heme Iron. Three Arrows summarizes the "Marketing Statements" as follows:

> (1) "Heme Iron is animal derived. Iron Repair is made from bovine spleen only" (2) the Three Arrows' Products are "non-GMO grass fed & finished bovine spleen" (3) "yes, the iron is 100% derived from bovine spleen (animal sourced)"; (4) "the iron is 100% derived from bovine spleen (animal sourced)"; and (5) "Bovine only dear"; (6) "Heme iron is from animal

has no evidence of actual deception. CBL responds that Moore's statement that Three Arrows' products are "indeed all heme," D. App. (ECF No. 68) at 136, is false, as established by evidence that the Heme Iron content in Three Arrows' products was less than 1 mg and that genuine issues of fact exist regarding whether Three Arrows' other Marketing Statements tended to deceive consumers.

2

The court will address in § III (B)(3) Moore's statement that Three Arrows' products are "indeed all heme." Setting this statement aside, CBL has not produced any evidence, nor has it argued, that any of the other Marketing Statements are literally false.[12] Accordingly, assuming *arguendo* that the remaining Marketing Statements are "either ambiguous or true but misleading," the court considers whether CBL has raised a genuine issue of material fact on the question of actual consumer deception. *Pizza Hut*, 227 F.3d at 497. The court concludes that it has not.

---

> sources, and non-heme iron comes from plant sources or synthetic iron salts"; (7) "bovine spleen iron"; and (8) "non-gmo, grass fed bovine source."

D. Br. (ECF No. 67) at 25-26 (citations and footnotes omitted).

[12]Its conclusory assertion that "[t]he summary judgment evidence shows that at least some of Three Arrows statements about the Heme Iron content of its products were literally false," P. Br. (ECF No. 84) at 21, is insufficient, without more, to create a genuine issue of material fact on the question of falsity. *See, e.g.*, *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).

When the statements on which a Lanham Act claim is based "are either ambiguous or true but misleading, the plaintiff must present evidence of actual deception." *Id.* "The plaintiff may not rely on the judge or the jury to determine, 'based solely upon his or her own intuitive reaction, whether the advertisement is deceptive.'" *Id.* (quoting *Johnson & Johnson v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992)). "Instead, proof of actual deception requires proof that 'consumers were actually deceived by the defendant's ambiguous or true-but-misleading statements.'" *Id.* (quoting *Am. Council*, 185 F.3d at 616).

"The type of evidence needed to prove materiality also varies depending on what type of recovery the plaintiff seeks. Plaintiffs looking to recover monetary damages for false or misleading advertising that is not literally false must prove actual deception." *Id.* (citing *Balance Dynamics Corp. v. Schmitt Ind.*, 204 F.3d 683, 690 (6th Cir. 2000); *Res. Developers v. Statue of Liberty-Ellis Island Found.*, 926 F.2d 134, 139 (2d Cir. 1991)). "Plaintiffs attempting to prove actual deception have to produce evidence of actual consumer reaction to the challenged advertising or surveys showing that a substantial number of consumers were actually misled by the advertisements." *Id.* (citation omitted). "Plaintiffs seeking injunctive relief must prove that defendant's representations 'have a tendency to deceive consumers.'" *Id.* (quoting *Balance Dynamics Corp.*, 204 F.3d at 690). "To prove a tendency to deceive, plaintiffs need to show that at least some consumers were confused by the advertisements." *Id.* at 498 (citing *Am. Council*, 185 F.3d at 618).

In response to Three Arrows' motion, CBL has adduced evidence that three members of the Iron Protocol Facebook Group characterized Moore's statement, "yes, the iron is 100%

derived from bovine spleen (animal sourced)," as a "clarification," and thanked her for it. *See* P. App. (ECF No. 86) at 656 ("Krystal Moore thank you for clarifying, now i know"); *id.* ("Krystal Moore ok thank you for the clarification. I a[p]ologize for my lack of understanding"); *id.* at 658 ("Krystal Moore thanks for clarifying."). CBL also adduces evidence that, when a clinic that stocks Three Arrows' products asked Moore whether the label statement of 22 mg of iron represented 22 mg of Heme Iron or a reference to the amount of spleen, Moore responded "that the label claim referred to 400 milligrams of concentrated spleen power 'to arrive at the 22 mg of elemental iron,'" P. Br. (ECF No. 84) at 23 (quoting P. App. (ECF No. 85) at 56-57), and contends that the clinic's response—"Thank you so much for getting back to me. That's really helpful"—shows that "this customer was left with the false impression that Three Arrows['] products contained 22 mg of Heme Iron and purchased it on that basis." *Id.*

The court notes at the outset that none of the evidence on which CBL relies to establish materiality relates to any Marketing Statement other than Moore's statement, "yes, the iron is 100% derived from bovine spleen (animal sourced)." Comments thanking Moore for her "clarification" with respect to that specific statement would not enable a reasonable jury to find that any consumer was actually confused by any of the *other* Marketing Statements alleged in the complaint. Nor would the response, "Thank you so much for getting back to me. That's really helpful," in the context of an email that was *not pleaded* as a basis for CBL's Lanham Act claim, enable a reasonable jury to find that the sender was actually confused by any of the Marketing Statements or that the Marketing Statements "have

a tendency to deceive consumers." *Pizza Hut*, 227 F.3d at 497.

Regardless, a reasonable jury could not find on the present summary judgment record that any consumer was actually misled by the other Marketing Statements or that any of the other Marketing Statements confused at least some consumers. *Id.* This is because statements such as "thank you for the clarification," or "[t]hat's really helpful," do not reveal anything about what the speaker understood was clarified with respect to the Heme Iron content (or lack thereof) in Three Arrows' products. And even if comments thanking Moore for her "clarification" tend to show that consumers were confused *as a result of the change in Three Arrows' labels*, these statements do not show confusion as a result of any Marketing Statement.

Because CBL has failed to adduce any evidence of actual consumer confusion with respect to the Marketing Statements or evidence that would enable a reasonable jury to find that the Marketing Statements had a tendency to deceive consumers, the court holds that Three Arrows is entitled to summary judgment dismissing CBL's Lanham Act and common law unfair competition claims to the extent they are based on the Marketing Statements, other than as discussed below.[13]

3

A reasonable jury could find, however, that Moore's response, "yes, the iron is 100%

---

[13]Because the court is granting summary judgment dismissing CBL's Lanham Act claim based on the other Marketing Statements, including Hartigan's statement, "Bovine only dear xx," D. App. (ECF No. 68) at 159, it does not consider, in the context of CBL's Lanham Act claim, whether Hartigan acted as an agent for CBL when she made this statement.

derived from bovine spleen (animal sourced)," to the question, "which means it is indeed all heme, correct?" D. App. (ECF No. 68) at 136, is literally false. The jury could do so based on evidence that internal testing on Three Arrows' IronRepair *Plus* product revealed that Heme Iron constituted only 3.7% of its label (less than 1 mg of Heme Iron) and that internal testing on its IronRepair *Simply Heme* product showed that Heme Iron constituted only 1.7% of its label (.34 mg of Heme Iron). Materiality with respect to this statement is therefore assumed. *See Pizza Hut*, 227 F.3d at 497 ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. In such a circumstance, the court will assume that the statements actually misled consumers." (citations omitted)).

4

The court now turns to the last element of CBL's Lanham Act claim: whether CBL has been, or is likely to be, injured as a result the statements at issue.

CBL has failed to produce any evidence that it has been injured or that it is entitled to recover damages[14] as a result of Three Arrows' Marketing Statements. It instead maintains that, in order to recover disgorgement of Three Arrows' profits under 15 U.S.C. § 1117(a), it "does not have to demonstrate that it actually lost sales to Three Arrows or that Three

---

[14]The court is aware of Fifth Circuit authority cautioning against "conflat[ing] the injury requirement for the false advertising claim with the requirement that [plaintiff] prove [its] actual damages in order to obtain relief." *Logan*, 263 F.3d at 462. But the court is unable to easily discern in several instances in the summary judgment briefing whether the parties are addressing injury, damages, or both. Regardless, because CBL has failed to adduce evidence of injury *or* damages, the distinction between the two is immaterial.

Arrows' misrepresentations actually caused consumers to purchase Three Arrows' products." P. Br. (ECF No. 84) at 12. But this is not the law in the Fifth Circuit.[15]

CBL is correct that 15 U.S.C. § 1117(a) permits the *calculation* of profits using the burden-shifting methodology it proposes. *See id.* ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). But "where a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits under 15 U.S.C. § 1117(a)." *Logan*, 263 F.3d at 465; *see also Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515 (5th Cir. 2020) (vacating jury award on Lanham Act false advertising claim because plaintiff "failed to present sufficient evidence of attribution. It cites nothing that links Rust-Oleum's false advertising to its profits, that permits a reasonable inference that the false advertising generated profits, or that shows that even a single consumer purchased RainBrella because of the false advertising."); *IQ Products Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (affirming summary judgment on Lanham Act false advertising claim where plaintiff "failed to produce competent summary judgment evidence that it was harmed by the defendants' allegedly false and misleading

[15]The case CBL cites for the proposition that "proof of the plaintiff's own lost profits is not a prerequisite to recovery under § 43(a)," is distinguishable. P. Br. (ECF No. 84) at 12 (quoting *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 801 (5th Cir. 2011)). That case, which addressed whether the plaintiff had adequately pleaded the elements of its Lanham Act claim for purposes of standing, did *not* hold that a plaintiff need not adduce any evidence of injury or damages in order to survive a motion for summary judgment on a Lanham Act false advertising claim.

advertisement" and "presented no competent summary judgment evidence that indicates that consumers would have bought [its] products instead of [defendant's product] in the absence of the defendants' allegedly false and misleading statements.").

Here, as in *Logan*, "there is no evidence that [Three Arrows'] profits were the result of the allegedly false advertising, nor [has CBL] presented or identified evidence as to other damages [it] suffered as a result of the false advertising alleged." *Boltex Mfg. Co. v. Ulma Piping USA Corp.*, 389 F.Supp.3d 507, 518 (S.D. Tex. 2019); *see also id.* at 519 ("Since Defendants have merely argued that they are entitled to relief without adequately evidencing any injury, Defendants have failed to satisfy the fourth element of their Lanham Act claim."); *Seitz v. Envirotech Sys. Worldwide Inc.*, 2007 WL 1795679, at *13 (S.D. Tex. June 19, 2007) (summary judgment proper on Lanham Act false advertising claim, even assuming fact issue as to falsity, where plaintiff "has not shown any evidence of damages or harm from the allegedly false statements"). CBL's evidence of Three Arrows' gross sales is alone insufficient to create a genuine issue of material fact on the question whether CBL was injured as a result of the Marketing Statements or on the question of damages. Accordingly, the court grants Three Arrows' motion for summary judgment on CBL's Lanham Act claim to the extent that CBL seeks to recover damages on this claim.

5

Even if CBL is not entitled to recover damages in connection with its Lanham Act claim, it may still be entitled to injunctive relief if it shows that it is likely to be injured as a result of the statement at issue: i.e., Moore's response, "yes" to the question whether Three

Arrows' products are "all heme."

In its summary judgment response, CBL adduces undisputed evidence that it manufactures, markets, and sells Heme Iron supplements and that Three Arrows directly competes with it in the market for iron supplements, particularly the Heme Iron market. It also adduces evidence that the parties agree that there are two types of iron supplements (Heme and non-Heme) and that Heme Iron has certain benefits over non-Heme iron, making Heme Iron supplements, overall, a more desirable and effective product for consumers and, particularly, those with iron deficiencies. CBL then argues that

> [b]y falsely advertising its products as containing heme iron, though they do not, and having the benefits and effects of heme iron, which Three Arrows acknowledges non-heme iron does not have, Three Arrows dilutes the value of authentic heme iron products and confuses consumers who purchase IronRepair Products into reasonably believing they are getting a product containing heme iron and heme iron's benefits when they are not. Because Three Arrows competes in the same market as CBL, when Three Arrows falsely advertises its IronRepair Products as containing heme iron, CBL—as a direct competitor selling products that actually contain heme iron—is likely injured by that false advertising.

P. Br. (ECF No. 84) at 16 (footnote omitted).

The court holds that CBL has adduced sufficient evidence to create a genuine issue of material fact on the question whether it is likely to be injured as a result of Moore's allegedly false statement: i.e., her response "yes," to the question whether Three Arrows' products are "all heme." It adduces evidence that it competes with Three Arrows in the same market and that its products, which contain Heme Iron, are superior. *Cf. Boltex Mfg. Co. v.*

*Galperti, Inc.*, 827 Fed. Appx. 401, 410 (5th Cir. 2020) (per curiam) (affirming summary judgment on Lanham Act counterclaims for false designation of origin and false advertising because defendant had failed to "demonstrate that because it competes in the same market as Plaintiffs, [it] was likely injured" when plaintiffs falsely advertised their products). Based on this undisputed evidence, a reasonable jury could find that CBL is likely to be injured by statements that falsely state or imply that Three Arrows' products contain Heme Iron. Accordingly, because genuine issues of material fact exist with respect to CBL's Lanham Act claim for injunctive relief, the court denies CBL's motion for summary judgment on this claim.

C

Three Arrows moves for summary judgment on CBL's Lanham Act and unfair competition claims based on the "Website Statements"[16] on the ground that CBL released all claims arising out of the pre-Settlement Agreement Website Statements. CBL responds that release is an affirmative defense that has been waived because Three Arrows failed to plead it, and that, in any event, the Settlement Agreement did not release Lanham Act claims that arose after its effective date.

Setting aside the question whether Three Arrows waived the affirmative defense of release by failing to plead it in its answer, the parties agree that the Settlement Agreement did not release CBL's Lanham Act claim to the extent that it is based on conduct that post-

[16]Three Arrows sets out the "Website Statements" in its summary judgment brief. *See* D. Br. (ECF No. 67) at 13-14.

dates the Settlement Agreement. *See* P. Br. (ECF No. 84) at 31 (CBL arguing that the release has no effect on post-settlement misrepresentations and that "the false and misleading statements on which CBL's Lanham Act claims are based all post-date both the Effective Date of the Settlement Agreement (May 31, 2024) and the deadline by which Three Arrows was required to stop representing the presence of Heme Iron in its products (September 1, 2024)"); D. Reply (ECF No. 99) at 21-22 ("Three Arrows agrees that settlement agreements, and the Settlement Agreement in this case, do not release new conduct that occurred after the Settlement Agreement was entered into.").

Because CBL does not contend that it intends to pursue its Lanham Act claim based on any Website Statement that pre-dates the Settlement Agreement, the court grants this ground of Three Arrows' motion for partial summary judgment. To the extent that CBL bases its Lanham Act claim on Website Statements that post-date the Settlement Agreement, that claim remains for trial.

IV

The court now turns to CBL's claim for breach of contract, which is based on allegations that Three Arrows breached the Rebranding, No-Misrepresentation, and Non-Disparagement Obligations of the Settlement Agreement.

A

1

Three Arrows moves for summary judgment on the ground that the Marketing Statements do not breach the No-Misrepresentation Obligation in the Settlement Agreement.

It contends that these statements do not imply that Three Arrows' products contain Heme Iron but, instead, "simply identify the source of iron contained in the Three Arrows Products—bovine spleen," and "educate the public that heme iron is derived from animal sources," as allowed by the "educational carveout" in the Settlement Agreement, D. Br. (ECF No. 67) at 37-38. In the alternative, it contends that it substantially performed under the Settlement Agreement and, therefore, did not breach it.

CBL responds that, when considered in context, Moore's Facebook comments deceptively imply the presence of Heme Iron in Three Arrows' products; that messaging on Three Arrows' website similarly implied the presence of Heme Iron in its products; and that none of Moore's statements falls within the "educational purposes" exception in the Settlement Agreement because they were not made *solely* for education purposes but were, instead, related to the marketing, advertising, or sale of Three Arrows' products. Regarding substantial performance, CBL contends that genuine issues of material fact preclude summary judgment based on this doctrine.

2

The No-Misrepresentation Obligation in the Settlement Agreement provides, in pertinent part:

> Beginning September 1, 2024 and continuing indefinitely thereafter, Three Arrows will not state or represent, whether expressly or by implication, that the IronRepair Products, or any other existing or future product that Three Arrows may at any time brand, label, market, advertise, or sell, constitutes, consists of, or contains any amount of Heme Iron. . . . For the avoidance of doubt, this provision does not apply to mere references to

> Heme Iron in media intended solely for educational purposes, so long as the statements or references are not affiliated or associated with the branding, labeling, marketing, advertising, or sale of any Three Arrows product and/or do not state or imply that Three Arrows products contain Heme Iron.

D. App. (ECF No. 68) at 31.

A reasonable jury could find, based on the summary judgment evidence, that Three Arrows breached the No-Misrepresentation Obligation. For example,[17] a reasonable jury could find that the following statement by Moore, when considered in context, implies that Three Arrows' products contain Heme Iron:




P. App. (ECF No. 86) at 653. A reasonable jury could also find that Moore's comment,

---

[17] "When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

"Nothing fishy going on. Heme iron is animal derived. Iron Repair is made from bovine spleen only," *id.* at 651, implies that the IronRepair products contain Heme Iron.

To the extent that Three Arrows maintains that statements such of these fall within the "educational carveout," this assertion also presents a question of fact that cannot be resolved on a motion for summary judgment. As CBL correctly contends, "there is, at a bare minimum, a genuine fact issue regarding whether Ms. Moore's statements were also to imply that Three Arrows' products contain Heme Iron." P. Br. (ECF No. 84) at 35-36. Moreover, if the jury finds that Three Arrows' statements imply that its products contain Heme Iron, the "educational carveout" would not apply. *See* D. App. (ECF No. 68) at 31 ("educational carveout" only applies if the statements "do not state or imply that Three Arrows products contain Heme Iron.").

3

Three Arrows contends that, because it substantially performed under the Settlement Agreement, "any defects in performance had no effect on the purpose of the Settlement Agreement," D. Br. (ECF No. 67) at 39, and the court should grant summary judgment in its favor based on the substantial performance doctrine. The court disagrees.

"The doctrine of substantial performance can . . . be asserted as an affirmative defense to a breach of contract claim." *Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co.*, 173 F.Supp.3d 363, 396 (N.D. Tex. Mar. 25, 2016) (Lindsay, J.) (citing *Smith v. Smith*, 112 S.W.3d 275, 279 (Tex. App. 2003, pet. denied)). To prevail on the defense of substantial performance, a defendant must establish that "the deviation from the contract did not

severely impair the purpose underlying the contract or was 'technical or unimportant.'" *Fishman v. C.O.D. Cap. Corp.*, 2017 WL 3033314, at *8 (Tex. App. 2017, no pet.) (citation omitted). As Three Arrows correctly points out, "[w]hether a party has substantially performed its obligations under an agreement is an issue of fact for the jury or fact finder." D. Br. (ECF No. 67) at 38 (quoting *Schweiger v. USAA Fed. Sav. Bank*, 2017 WL 6503660, at *4 (W.D. Tex. Dec. 18, 2017)); *see also Smith*, 112 S.W.3d at 279 ("Whether a [party] substantially complies with a . . . contract is generally a question of fact." (citing cases)).

A reasonable jury could find that the alleged breaches of the Settlement Agreement, if proved, are material and that, in light of these breaches, Three Arrows did not substantially perform under the Settlement Agreement.

B

Three Arrows next moves for summary judgment on the ground that all of the statements that allegedly violate the Non-Disparagement Obligation were made by Hartigan, who is not an agent of Three Arrows and did not act, or purport to act, on Three Arrows' behalf. CBL responds that genuine issues of material fact exist on the question whether Three Arrows breached the Non-Disparagement Obligation because Moore knew about, approved, and ratified Hartigan's disparaging statements about CBL.

The Non-Disparagement Obligation in the Settlement Agreement provides that "[e]ach Party agrees that it will not make to any other person or entity any false, misleading, threatening, or disparaging statement regarding the other Party or that Party's employees, products, or services[.]" D. App. (ECF No. 68) at 32. "Party" is defined to include Three

Arrows "and its affiliates, predecessors, successors, agents, employees, members, managers, officers, directors, representatives, *and all other persons acting, or purporting to act, on its behalf*, but only to the extent such person is acting or purporting to act on behalf of Three Arrows." *Id.* at 31 (emphasis added).[18]

In response to Three Arrows' motion, CBL adduces evidence of a July 31, 2024 text exchange between Moore and Hartigan during which Moore informed Hartigan about the Settlement Agreement and stated that she (Moore) was "not allowed to personally disparage [CBL] or disclose the terms of the settlement agreement"; that Hartigan responded, "Cool but I can . . . Unless that it's specified in your agreement that someone 1099 from you can't"; and that Moore told Hartigan, "I think what you've said is fine." P. App. (ECF No. 85) at 278. CBL also points to evidence that Hartigan had posted, that day and the previous day, statements in the Iron Protocol Facebook Group such as, "proferrin tried to take them down and bleed them out in legal fees because they were pissed they infringed on their market share," D. App. (ECF No. 68) at 97; "Proferrin the competitor came after them mad that they

---

[18]The Settlement Agreement does not specify what it means to be a "person[] acting, or purporting to act, on [Three Arrows'] behalf." D. App. (ECF No. 68) at 31. But because the list also includes "agents" in the definition of "Party," the court assumes that the phrase "persons acting, or purporting to act, on its behalf" means something different than the term "agent." *See, e.g.*, *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 917 F.3d 352, 358 (5th Cir. 2019) ("A basic rule of contract construction is that the preferred interpretation is one that provides meaning to every provision and does not read any term out of the contract." (citation omitted)). To the extent that the phrase "persons acting, or purporting to act, on [Three Arrows'] behalf" is ambiguous, it presents another fact issue to be resolved at trial. *See, e.g.*, *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 742 (5th Cir. 2026) (under Texas law, "the interpretation of an ambiguous contractual provision is a fact issue to be decided by the trier of fact").

took a chunk of their market share and wanted to bleed them dry in legal battles," *id.* at 98; and "I'm pissed off with proferrin about it. Greed," *id.* at 99. A reasonable jury could find, based on this evidence, that when Hartigan made the allegedly disparaging comments, she was a "person[] acting, or purporting to act, on [Three Arrows'] behalf," as that phrase is used in the Settlement Agreement.

C

The court will briefly address Three Arrows' argument that it is entitled to summary judgment on the ground that there is no evidence or genuine issue of fact supporting the allegation that CBL was damaged by any breach. "Generally, the measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed." *L & C Consultants, LLC v. ASH Petroleum, Inc*., 2009 WL 3110200, at *9 (N.D. Tex. Sept. 29, 2009) (Fitzwater, C.J.) (quoting *Penner Cattle, Inc. v. Cox*, 287 S.W.3d 370, 372 (Tex. App. 2009, pet. denied)), *aff'd*, 464 Fed. Appx. 199 (5th Cir. 2010). If CBL succeeds at trial on its breach of contract claim, it will be limited to the amount of damages that would restore it to the position that it would have been in had Three Arrows not breached the Settlement Agreement. The court declines at this juncture to speculate regarding what amount of damages, if any, CBL will be able to prove at trial.

V

Also pending before the court are Three Arrows' motion to exclude and strike the opinions of CBL's non-retained expert, Bergonia, and partial motion to exclude expert

testimony and to strike the report of CBL's expert, Collins. Because the court's ruling on Three Arrows' motion for partial summary judgment may impact how CBL chooses, if at all, to use the testimony of Bergonia or Collins, the court in its discretion defers a ruling on Three Arrows' motions until the pretrial conference, or after an objection is made at trial. These motions are denied without prejudice.

* * *

Accordingly, for the reasons explained, the court grants in part and denies in part Three Arrows' motion for partial summary judgment and denies without prejudice Three Arrows' motions to exclude and strike.

**SO ORDERED**.

October 14, 2026.

SIDNEY A. FITZWATER
SENIOR JUDGE